## JESSE McINTOSH v. STATE.

No. A-1251.  Opinion Filed December 31, 1912.

(128 Pac. 735.)

1.  **JURY—Challenge to Panel—Discrimination—Negroes.** (a) When a negro is charged with violating the criminal laws of a state, and when under oath he challenges the panel of the jury upon the ground that the commissioners who selected such jury and the sheriff who summoned them had excluded from the jury all persons of African descent solely on account of their race and color, and offers evidence to sustain this ground of challenge, the trial court should hear the evidence, and, if it is of the opinion that as a matter of fact negroes were intentionally excluded from the panel solely upon the ground of their race and color, said motion should be sustained. This has been repeatedly decided by the Supreme Court of the United States, and all state tribunals are bound thereby.

(b) The mere fact that the jury was composed solely of white men will not be ground for challenge in such case. There is no law requiring that negroes shall be selected to sit upon juries. The only law upon this subject is they must not be excluded therefrom solely on account of their race or color.

(c) Officers charged with the duty of selecting and summoning jurors can exercise their own discretion in selecting those persons who in their judgment are competent and qualified to serve as such jurors, provided that they do not exclude competent persons who are negroes solely on account of their race or color.

(d) For facts which did not sustain a motion to quash the panel of the jury upon the ground that negroes had been illegally excluded from the panel, see opinion.

2.  **HOMICIDE—Trial—Instructions—Self-Defense.** For a correct instruction upon the subject of uncommunicated threats, see opinion.

3.  **SAME — Instructions—Requests—Self-Defense.** (a) Where an issue is properly presented by the evidence and the defendant requests it, he is entitled to an instruction upon the hypothesis that his testimony is true.

(b) Where the evidence reasonably presents that issue in a murder case, it is the right of the defendant to have a clear, affirmative, and clean-cut instruction upon the law of self-defense.

(c) Where an instruction requested by the defendant is not in proper form but pertains to a material issue in the case as made by the evidence, the court should correct it and give it in proper form, if it has not otherwise properly instructed the jury upon that issue.

(Syllabus by the Court.)

*Appeal from District Court, Wagoner County;*
*R. C. Allen, Judge.*

Jesse McIntosh was convicted of murder, and his punishment assessed at imprisonment in the penitentiary for life, and he appeals. Reversed and remanded for new trial.

*E. P. Rhea, W. B. Moss,* and *Watts & Watts,* for appellant.

*R. E. Gish,* Asst. Atty. Gen., for the State.

FURMAN, P. J.  First. Appellant filed a motion to quash the panel of the jury in this cause upon the following grounds:

"Comes the defendant, Jesse McIntosh, and objects to the panel of the jury in this court for the purpose of sitting as a jury in this cause, and objects to going to trial because he says: That he is a person of African descent, known as a negro, and that the panel from which all jurors must be called in this cause is composed exclusively of white persons, and that all persons of color or African descent known as negroes were excluded from serving on said panel of jury by the jury commissioners of Wagoner county on account of their race and color and for no other reason. (2) That the jury commissioners of this, Wagoner county, have for a long period of time, to wit, 12 months last past, neglected and refused and excluded all colored persons, or persons of African descent, from serving on juries in said county solely on account of their race and color. That said exclusion, neglect, and refusal is a discrimination against this defendant, who is a negro, and is a denial to him of an equal protection of the law as guaranteed to him under the Constitution of the United States. (3) The defendant says that more than one-third of the inhabitants and more than one-fourth of the legal electors of Wagoner county are persons of color or African descent, known as negroes, and were excluded from such jury service by the jury commissioners of said Wagoner county, and other officers whose duty it was to summon juries, on account of their race and color and for no other purpose."

In support of this motion appellant placed two witnesses upon the stand. A. L. Harris testified on behalf of appellant that he was deputy clerk in the county clerk's office of Wagoner county; that he was present and acted as clerk when the jury commissioners selected this jury list; that he did not know whether any negroes were selected on the jury or not, but does know that no

negroes were placed on the list; that no reasons were given by
the commissioners for this action, and witness did not know why
it was taken; that witness did not hear either of the commission-
ers say that they were excluding negroes on account of their race
or color. W. B. Moss testified for appellant that he was a lawyer
and resided in Wagoner, Okla.; that Wagoner county had a negro
population of between 8,000 and 9,000; that he and the pre-
ceding witness Harris were both Republicans in politics; that
only a very small per cent., something like 4 or 5 per cent., of
the negroes of Wagoner county participated in the last elec-
tion as qualified voters. This is all of the testimony that was
offered in support of appellant's motion. Upon this showing the
trial judge found as a matter of fact that it had not been estab-
lished that the jury commissioners had discriminated against the
negroes on account of their race or color. With this finding we
agree. No person is competent for jury service unless he is a
duly qualified elector.

Section 3991, Comp. Laws 1909, is as follows:

"That all male citizens, residing in any of the counties of this
state, having the qualifications of electors, of sound mind and
discretion, of good moral character, not judges of the Supreme
Court or district courts, or county courts, sheriffs or deputy sher-
iffs, constables, jailers, licensed attorneys, engaged in the practice
of law, habitual drunkards, any one not afflicted with a bodily in-
firmity amounting to a disability, and those who have never been
convicted of any infamous crime and served a term of imprison-
ment in any penitentiary in any state or territory in the United
States, for the commission of a felony, are, and shall be compe-
tent jurors to serve on all grand and petit juries within their
counties, or subdivisions respectively in this state; provided, per-
sons over sixty years of age, ministers of the gospel, and county,
or district officials, practicing physicians, undertakers, pharma-
cists, teachers in public schools, postmasters, and carriers of the
United States mail, members of the National Guard and all mem-
bers of good standing of any regular organized fire department,
if they claim their exemption, shall not be compelled to serve as
jurors in this state."

It appears from the testimony and the finding of the trial
court that the jury commissioners were simply endeavoring to get
qualified men to serve on the jury. The question as to the ex-

clusion of negroes from the jury in a case where the defendant is a negro was before this court in the case of *Smith v. State,* 4 Okla. Cr. 328, 111 Pac. 960, 140 Am. St. Rep. 688, on a motion in every way similar to that now before us. We then gave this question our most careful attention, and cannot do better than to repeat what was there said:

"The defendant then offered to introduce evidence in support of the motion, but the court refused to receive such evidence, and overruled the motion, to all of which the defendant excepted. In this there was error. The Supreme Court of the United States has repeatedly passed upon this question. The substance and effect of their decisions is that whenever by any action of a state, whether through its Legislature, through its courts, or through its executive and administrative officers, persons of African descent are excluded solely on account of their race or color from serving on grand or petit juries in a criminal prosecution against a negro, the equal protection of the law is denied to such defendant, contrary to the fourteenth amendment to the Constitution of the United States, and that in such cases, if a defendant makes a timely challenge to the jury, and it is denied by the state court, a conviction upon appeal to the United States courts will be set aside. See *Strauder v. W. Va.,* 100 U. S. 303 [25 L. Ed. 664]; *Neal v. Delaware,* 103 U. S. 370-379 [26 L. Ed. 567]; *Gibson v. Miss.,* 162 U. S. 565 [16 Sup. Ct. 904, 40 L. Ed. 1075]; *Carter v. Texas,* 177 U. S. 442 [20 Sup. Ct. 687, 44 L. Ed. 839]; *Rogers v. Ala.,* 192 U. S. 226 [24 Sup. Ct. 257, 48 L. Ed. 417]. By these decisions we are bound. See, also, *Castleberry v. State,* 69 Ark. 346 [63 S. W. 670, 86 Am. St. Rep. 197]; *Wilson v. State,* 69 Ga. 224; *Green v. State,* 73 Ala. 26; *Tarrance v. State,* 43 Fla. 446, 30 South. 685; *Haggard v. Commonwealth,* 79 Ky. 366; *Commonwealth v. Johnson,* 78 Ky. 509; *Cooper v. State,* 64 Md. 40, 20 Atl. 986; *Smith v. State,* 44 Tex. Cr. R. 90, 69 S. W. 151; *Leach v. State* (Tex. Cr. App.) 62 S. W. 422; *Kipper v. State,* 42 Tex. Cr. R. 613, 62 S. W. 420. We therefore hold that the trial court should have heard the testimony offered by the defendant, and that, if it appeared therefrom that negroes were excluded from the jury by the officers of the court solely upon the ground of their color, the challenge to the jury should have been sustained. The fourteenth amendment to the Constitution of the United States does not require the jury commissioners or other officers charged with the selection of juries to place negroes upon the jury list simply because they are negroes. The allegation that the jury was composed solely of white men does not violate

the fourteenth amendment to the Constitution of the United States, and proof of that fact would not support the motion. The ground upon which the decisions of the Supreme Court of the United States rest is not that negroes were not selected to sit upon juries, but that they were excluded therefrom solely on account of their race or color. In other words, there is no law to compel the jury commissioners or other officers of the court to select or summon negroes as jurors. They can select any persons whom they regard as competent to serve as jurors without regard to their race or color, but the law prohibits them from excluding negroes solely on account of their race or color. Therefore the judge should have heard the testimony, and if he found from the evidence that there was an agreement among the jury commissioners to exclude negroes from the jury panel simply because they were negroes, or that the officers charged with the duty of selecting and summoning said juries had refused to select or summon negroes on the jury, and had excluded them therefrom solely upon the ground that they were negroes, then the judge should have sustained said motion. There is no law requiring an officer to place negroes on the panel simply because they are negroes. It is his duty to select the best jurors without regard to race or color. When this is done, the law is satisfied."

The court did not err in overruling the motion to quash the panel.

Second. Upon the trial of this cause there was a square conflict in the evidence. The testimony for the state, if true, established a cold-blooded assassination, while the testimony of the defendant, if true, established a case of self-defense. Upon the trial of this cause the court instructed the jury as follows upon the subject of threats:

"You are instructed, if one kills another merely because the other has threatened him, it is murder. Where the plea is self-defense, and where there is evidence other than mere threats tending to show that the deceased was the aggressor and that the defendant acted in his real or apparent necessary self-defense, then evidence that prior to the fatal difficulty the deceased had made threats of violence against the defendant is admissible, and may be considered with all the other evidence in the case in determining the state of the deceased's feelings toward the defendant and who was the probable aggressor in the fatal difficulty."

In their brief counsel for appellant make the following objection to this instruction:

"The trouble with this instruction is that it did not give the defendant the advantage of one important point. Had the court added to the instruction 'that threats were material for the purpose of determining what the defendant might reasonably have apprehended from the overt actions and demonstrations of the deceased,' we would have no room to complain, but the instruction as it stands does not give the jury the right to pass upon what the defendant might have reasonably apprehended at the time the defendant claims the deceased drew the pistol from under her apron."

In reply to the argument of counsel for appellant, the Assistant Attorney General takes the position that an instruction is not defective because it fails to state all of the purposes for which the jury might consider threats, and then proceeds as follows:

"The court did not tell the jury that they must not consider threats for any other purpose, and consequently it left the jury at liberty to take threats into consideration if they believed that the defendant really acted under a reasonable apprehension of fear for his own safety and under the apparent necessity for self-defense. If the jury believed in this latter state of facts, which is indispensable in order to make threats material, then they would without any specific instruction take into consideration evidence of threats in order to construe the overt acts of the deceased if any, in the light in which they appeared or would appear to the defendant."

With this contention we cannot agree. When an instruction informs a jury as to the purpose for which they may consider threats, the necessary effect of such instruction is to confine the consideration of the jury to the purpose stated, and, if the court neglects to correctly state all of the purposes for which threats are admitted and for which they may properly be considered by the jury, it cannot be said that such an instruction is correct, and that the jury may consider threats for other purposes than those enumerated. Such a contention would make the jury the judges of the law. This is inconsistent with our statute which requires the jury to be guided by the law given them by the court. Neither is it the law as stated by the Assistant Attorney General, that it is indispensable for the jury to believe that the defendant really acted under a reasonable apprehension of fear for his own safety and under the apparent necessity for self-defense before they

could take into consideration evidence of threats in the light in which they appeared to the defendant, because, if the jury believed anything of the kind, it would be their duty to acquit the defendant whether threats were made or not. This statement would entirely wipe out and destroy the doctrine of threats, and the position is altogether untenable. There is, however, another view upon which the instruction given in this case must be sustained. If it had been proven that the threats testified to had been communicated to the appellant prior to the time of the commission of the homicide, then this objection would have been good, but there was no evidence that appellant was informed of the alleged threats at the time of the homicide, and appellant himself did not claim that he acted upon threats. Under these circumstances, even if threats had been made, they could not have been the basis of any apprehension of danger on the part of appellant. The trial court therefore did not err in the instruction given. But this instruction would not have been sufficient if the testimony had shown that the threats had been communicated to the appellant prior to the time of the killing. For a full discussion of this question, see *Rogers v. State,* decided at the October term of this court, *ante,* 127 Pac. 365.

Third. Upon the law of self-defense the court instructed the jury as follows:

"You are instructed that the law of self-defense is solely and emphatically a law of necessity, that it does not imply the right of attack, and could not avail the defendant if he was the aggressor, or if the difficulty was sought for by him, or was provoked by him by any willful act of his own, reasonably calculated to bring it about, no matter how hard he was pressed, or how great his danger became, during the progress of the difficulty, he would not be justified in taking the life of the deceased; but if the testimony upon this point raises in your minds a reasonable doubt as to whether or not the defendant at the time of the homicide acted in good faith and upon reasonable appearances of danger of receiving great bodily harm or death at the hands of his assailant, and that defendant was not himself the aggressor, the jury should resolve that doubt in favor of the defendant and acquit him. Given and excepted to by defendant."

Counsel for the state in his brief says:

"This instruction we submit complies with the requirement of the rule in *Payton v. State,* 4 Okla. Cr. 316 [111 Pac. 666]."

This is an unfortunate citation for counsel for the state. In Payton's case this court said:

"Upon the trial of this case there was a square conflict in the evidence. The testimony for the state tended to sustain the charge contained in the indictment. The defendant and his witnesses testified that the defendant had purchased the hogs in question in good faith from one Daniel Webster. The court instructed the jury with reference to the law applicable to the evidence for the state, but the charge is silent as to the issue presented by the testimony for the defendant. As we understand the law, a defendant has the right to have a clear affirmative charge based upon the hypothesis that his testimony and the testimony of his witnesses is true, when this testimony affects a material issue in the case. Counsel for defendant requested eight special instructions, all of which were refused by the court. While we are not prepared to say that the court erred in refusing any one of the requested instructions, yet their general effect was to call the attention of the court to the point in issue, and the court should have instructed the jury correctly as to the law with reference to purchasing property in good faith, and then left it to the jury to say which testimony they believed. For this defect in the instructions the case is reversed and remanded."

It will be observed that in the instruction in the case now before us the court repeatedly informed the jury in positive terms under what circumstances the defendant would be guilty and under which they could not lawfully acquit him. But it fails to inform the jury in a clear, affirmative, and clean-cut manner as to his right of self-defense. For a discussion of the necessary elements of an instruction on the law of self-defense when this issue is properly presented by the evidence, see *Price v. State,* 1 Okla. Cr. 358, 98 Pac. 447; and for a still more recent and elaborate discussion of this question, see *Rogers v. State,* decided at the October term of this court, *ante,* 127 Pac. 365.

Counsel for appellant on this question requested the court to instruct the jury as follows:

"Gentlemen of the jury, you are instructed that if you believe from the evidence that the deceased attempted to take the life of the defendant, or do him great bodily harm, then the defendant had the right to act in his self-defense, and it matters not

whether the danger was real or apparent, if, viewing the situation from the defendant's standpoint, as a reasonable person, he had the right to believe and did believe that he was in danger of losing his life, or having great bodily harm inflicted upon him, and killed the deceased, then your verdict should be for the defendant."

Counsel for appellant in their brief say:

"We believe this was a fair instruction on the law of self-defense, and, as the court nowhere gave us an instruction on self-defense, we were entitled to it. Blashfield, Instructions to Juries, vol. 2, 1508-1517, in substance lays this instruction down as proper. At any rate, an instruction on the ground of self-defense being material, it was error, after request, for the court to refuse to give a proper instruction."

While the instruction requested was not as full as it should have been (see *Rogers v. State, supra*), yet the attention of the court being called directly to this matter the court should either have given the instruction requested, or it should have corrected it, and given it in proper form if it had not otherwise properly instructed the jury. See *Roberson v. United States*, 4 Okla. Cr. 336, 111 Pac. 984; *Morris v. Territory*, 1 Okla. Cr. 617, 99 Pac. 760, 101 Pac. 111. It is a fundamental principle of law that in a criminal case, where an issue is properly presented by the evidence and the defendant requests it, he is entitled to a correct instruction based upon the hypothesis that his testimony is true. This court expresses no opinion as to the guilt or innocence of appellant, but we are of the opinion that upon a vital point in this case the jury were not fully and correctly instructed as to appellant's right of self-defense. As to what would be a correct instruction, see *Rogers v. State, supra*. It is true that appellant is only a poor and friendless negro, but his rights must be determined by the law, and not by the color of his skin, or by the position which he occupies in society. The rich, the strong, and the influential can, as a rule, take care of themselves. It is the poor, the weak, and the humble who need the strong arm of the law for their defense. Courts should be ready to extend this protection to all persons alike. There can be no question but that the issue of self-defense is presented by the testimony in this case.

For the error of the court in not fully instructing the jury on this question, the judgment of the lower court is reversed, and the cause is remanded for a new trial.

ARMSTRONG and DOYLE, JJ., concur.