## LEE PETERS v. STATE.

No. A-4307.   Opinion Filed Dec. 12, 1922.
(211 Pac. 427.)

(Syllabus.)

1. **Homicide—Evidence Sustaining Conviction for Murder, but Insufficient to Warrant Death Penalty.** In a prosecution for murder, the evidence considered, and held sufficient to warrant a verdict convicting the defendant of murder, but insufficient, under the circumstances of the case, to warrant the extreme penalty of the law, and the judgment and sentence of death is modified to imprisonment for life at hard labor.

2. **Jury—Negro's Challenge to Array on Ground that Names of Negroes Were not Placed in Jury Box Properly Overruled.** On a challenge to the panel, interposed by a negro defendant, on the ground that the jury list was composed exclusively of white men, that the jury commissioners failed to place the names of negroes in the jury box, where the evidence offered in support of said challenge failed to show that the names of negroes on the tax rolls were excluded from the jury list on account of their race or color, held, that the trial court properly overruled the defendant's challenge to the array.

3. **Same—That Jury List Composed Solely of White Men not Ground for Challenge.** The mere fact that the jury list is composed solely of white men will not be ground for challenge in such a case. There is no law requiring that negroes shall be selected to sit upon juries. The only law upon this subject is that they must not be excluded therefrom solely on account of their race or color.

4. **Same—Discretion of Officers Charged with Selection of Jury List.** Officers charged with the duty of selecting jury lists from the names on the tax rolls of the county can exercise their own discretion in selecting those persons who in their judgment are competent and qualified to serve as jurors, provided that they

do not exclude competent and qualified persons who are negroes solely on account of their race or color.

5.    **Same—Substantial Compliance with Law as to Manner of Selecting Jurors.** A substantial compliance with the law as to the manner in which jurors shall be selected and summoned is all that is required.

Appeal from District Court, Creek County; Lucien B. Wright, Judge.

Lee Peters was convicted of murder, and he appeals. Modified and affirmed.

Thompson & Smith, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, P. J.    This is an appeal by Lee Peters from a conviction of murder and judgment and sentence of death. The information charged that Lee Peters did in Creek county, on or about the 18th day of April, 1920, kill and murder one J. A. Anderson by shooting him with a shotgun. In accordance with the verdict of the jury, he was sentenced to suffer the penalty of death by electrocution. When the appeal was perfected, an order was entered and served on the warden of the penitentiary staying the execution of the sentence pending decision of the appeal.

The record shows that the information in this case was filed in the district court of Creek county on the 27th day of May, 1920; that on the 15th day of August, 1921, an order was entered transferring said cause to the superior court; that on his trial in the superior court the defendant, Lee Peters, was found guilty of manslaughter in the first degree, and his punishment assessed at imprisonment in the penitentiary for a period of ten years; that a motion for new trial was duly filed, which motion was sustained, and a new trial award-

ed; that on the motion of the county attorney said cause was on the 17th day of December, 1921, duly transferred to the district court. When the case was called for trial, the defendant interposed a "challenge to the array of jurors," based upon the ground that the panel from which all jurors must be called in this cause is composed exclusively of white persons, that the jury commissioners failed to place the names of negroes in the jury box, that said exclusion is a discrimination against this defendant, who is a negro, and is a denial to him of the equal protection of the laws as guaranteed to him under the Constitution of the United States.

In support of his challenge he called as a witness, J. A. Ellege, who testified in substance as follows:

"Mr. Ed Creegan, Mr. Fred C. Napp, and myself were appointed jury commissioners on the 1st day of January, 1922. We selected the jurors for the district, superior, and county courts of Creek county. We put into the box 200 names for each court. We selected the jurors from the names on the tax rolls, except where we knew personally that the name considered was that of a taxpayer. We put the names of 5 or 6 negroes in the district court box. We selected names under the law that says a negro had the same rights as a white man. I did not know anything about who was going to be tried, white men or negroes."

Fred C. Napp in substance testified:

"I am one of the jury commissioners of this county. We put the names of some negroes in this box. As I understand the law, we could not discriminate against negroes. I put in 4 names of negro taxpayers myself, and in all we put in 10 or 12. We did not exclude any taxpayer whose name was on the roll because he was a negro. We wanted to comply with the law."

After hearing the testimony and the argument of counsel the court overruled the challenge to the panel and allowed an exception.

The sole question arising on the trial and now presented to us for decision is whether the court erred in overruling the defendant's challenge to the array of jurors. Section 3515, Comp. Stats. 1921, provides as follows:

"Said jury commissioners shall meet in the office of the county clerk, on the first Monday in January and July of each year, and at such other times as the district judge may order, and, after taking and subscribing their official oath, they shall proceed to select, for the district court, one list of names, of not less than two hundred persons, or such other number as the district judge may order, and a second and different list for the county court, of not less than two hundred names, or such other number as the county judge may order, which lists shall be selected from the names on the tax rolls of the county. No name of any person who does not possess the qualifications of a juror as prescribed by this chapter, or who has served upon a regular jury panel within the preceding twelve months, shall be placed upon a jury list. Each jury list shall be made up of names of persons from the various municipal townships in the county in proportion, as nearly as practicable, to the voting strength of such township."

By numerous decisions of the Supreme Court of the United States it is held:

"Whenever by any action of a state, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment to the Constitution of the United States." Carter v. Texas, 177 U. S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839; Rogers v. Alabama, 192 U. S. 226, 24 Sup. Ct. 257, 48 L. Ed. 417.

The precise question involved in this case was fully considered and passed upon by this court in McIntosh v. State, 8 Okla. Cr. 469, 128 Pac. 735, and in Smith v. State, 4 Okla.

Cr. 328, 111 Pac. 960, 140 Am. St. Rep. 688, where this court say:

"The Fourteenth Amendment to the Constitution of the United States does not require the jury commissioners or other officers charged with the selection of juries to place negroes upon the jury list simply because they are negroes. The allegation that the jury was composed solely of white men does not violate the Fourteenth Amendment to the Constitution of the United States, and proof of that fact would not support the motion. The ground upon which the decisions of the Supreme Court of the United States rest is not that negroes were not selected to sit upon juries, but, that they were excluded therefrom solely on account of their race or color. In other words, there is no law to compel the jury commissioners or other officers of the court to select or summon negroes as jurors. They can select any persons whom they regard as competent to serve as jurors without regard to their race or color, but the law prohibits them from excluding negroes solely on account of their race or color."

And in Wadsworth v. State, 9 Okla. Cr. 84, 130 Pac. 808, it is held that:

"A substantial compliance with the law as to the manner in which jurors shall be selected and summoned is all that is required."

It follows that the trial court properly overruled the defendant's challenge to the array. The only other assignment is that:

"The evidence is insufficient to sustain a capital verdict and judgment."

The facts in the case briefly stated are that the defendant attended a barbecue and there bought 20 cents worth of meat from the deceased, a negro, and shortly after deceased asserted that the defendant had not paid for the meat and owed him for it. Previously there had been no acquaintance or re-

lations whatever between defendant and the deceased. The defendant left the place where the quarrel took place and went about half mile to the town of Slick, where his wagon and team were, and in which wagon there was a double-barrel shotgun loaded with buckshot, which he had placed there when he left home. He than drove the team back to the barbecue.

The state's witnesses testified that when the defendant drove up he grabbed his gun and shot deceased. As a witness in his own behalf the defendant testified that the deceased came towards him in a threatening manner with a pistol and said, "Back up!" and, fearing for his life, he fired. The Attorney General's brief concludes as follows:

"It occurs to us, however, that inasmuch as plaintiff in error had at one time been accorded a sentence of ten years in the penitentiary, and was dissatisfied with it and sought and obtained a new trial, the result of which was a verdict fixing his punishment at death, is of itself sufficient ground for this court to modify the judgment of the court and reduce the punishment of plaintiff in error to confinement in the penitentiary for life, and this we respectfully recommend; otherwise, we are firmly convinced and respectfully suggest that the judgment of the trial court should be affirmed."

In a capital case, the law of our state in its great humanity allows the jury, after they have first determined the question of guilt, to assess the punishment, which may be death or imprisonment for life at their discretion, and, even after the jury say that the defendant should suffer death, this court, in furtherance of justice, has the power to modify the judgment to imprisonment for life. Section 2820, Comp. Stats. 1921. In the case of Fritz v. State, 8 Okla. Cr. 342, 128 Pac. 170, it is said:

"The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor, when deemed proper in the furtherance of justice,

is in no sense the power of commutation of the sentence of the lower court. Commutation can be granted only by the chief executive of the state, and is granted as a matter of clemency. The judicial power to modify a judgment and sentence and the executive power to pardon, parole, or commute are wholly distinct in their nature. The one is an award of justice, and the other is an act of grace. Commutation is a matter of discretion, and may be refused. Justice is imperative, and must not be denied. The fact that the Governor has the power to commute does not abridge the defendant's right to appeal to this court for relief. In other words, the provision of our criminal procedure act makes it the duty of this court to review the record, and in a proper case, if necessary in the furtherance of justice, modify the judgment so as to prevent the imposition of punishment which the evidence will not warrant."

See Chambers v. State, 16 Okla. Cr. 238, 182 Pac. 714; Wilson v. State, 17 Okla. Cr. 47, 183 Pac. 613; State v. Young, 19 Okla. Cr. 363, 200 Pac. 260; Walker v. State, 18 Okla. Cr. 661, 202 Pac. 799.

Upon a careful examination and consideration of the whole record, we are of opinion that the evidence is insufficient to warrant the extreme penalty of the law, and for this reason the jury abused its discretion in assessing the death penalty, and that justice requires a modification of the judgment and sentence of death to that of imprisonment in the penitentiary for life at hard labor.

The judgment of the district court of Creek county herein is so modified, and, as thus modified, the judgment is affirmed.

MATSON and BESSEY, JJ., concur.