## JOHN L. WELCH v. STATE

No. A-4766.    Opinion Filed May 16, 1925.
(236 Pac. 68.)

(Syllabus.)

1. **Statutory Provisions.** Section 2471, Comp. Stat. 1921, provides that an arrest may be made without a warrant (1) when the person arrested has committed a felony, although not in the officer's presence; (2) when a felony has been committed and the officer has reasonable cause for believing that the person arrested committed it; and (3) on a charge made, on reasonable cause, of the commission of a felony by the person arrested.

2. **Arrest—Arrest Without Warrant of Person in Possession of Property Alleged to Have Been Stolen.** Where personal property is said to have been stolen, it is not incumbent upon a peace officer to first ascertain whether the person in whose possession it is found claims ownership in the property.

3. **Arrest—Arrest Without Warrant not Unlawful Where Reasonable Ground to Believe Accused Guilty of Felony.** If a constable or

other peace officer arrest a person without a warrant he is not bound to show in his justification a felony actually committed to render the arrest lawful, but if he suspects one on his own knowledge of facts, or upon facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of a felony, the arrest is not unlawful.

4. **Same—Arrest Without Warrant Justified Despite Subsequent Events.** If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without a warrant, although subsequent events prove that no offense had been committed.

5. **Same—Reasonable Grounds for Believing Accused Guilty.** To justify an arrest without a warrant, the officer must not act upon facts indicative of guilt when at the same time he has knowledge of other facts indicative of innocence. In such a case the reasonable grounds should be deduced from a consideration of all the facts known to the officer.

6. **Evidence—Written Return to Search Warrant Best Evidence— Exclusion Erroneous.** The written return to the execution of a search warrant is ordinarily the best evidence of what the executing officers did. The refusal of the court to permit the defendant to show this by the written return, under the circumstances here, was error.

7. **Arrest—Accused not to be Subjected to Unnecessary Restraint.** An accused person is not to be subjected to any more restraint than is necessary for his arrest and detention.

8. **Jury—Jurors Who Have Opinion Based on Rumor or Newspaper Reports not Necessarily Disqualified.** Jurors who have formed or expressed an opinion based upon common rumor or newspaper reports are not necessarily disqualified.

9. **Jury—Overruling Motion to Suppress Panel Because no Negroes Included not Error.** Where a jury panel is challenged on the ground that no negroes were drawn on the panel, and the jury commissioners testify that they selected the jurors from the tax rolls of the county without any discrimination against negroes, and the showing is not specifically controverted, the trial court commits no error in overruling the motion to suppress the panel.

Appeal from District Court, Muskogee County; Guy F. Nelson, Judge.

John L. Welch was convicted of murder and sentenced

to life imprisonment, and he appeals. Reversed and remanded on rehearing. Original opinion withdrawn.

W. H. Twine, H. T. Walker, and C. W. Wesley, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, P J. The amended information in this case charges that the plaintiff in error, John Welch, a negro, willfully and unlawfully, with a premeditated design to effect the death of Homer Teaff, shot the said Homer Teaff with a pistol and a rifle and struck him on the head with a cotton hoe, crushing his skull, from which mortal wounds so inflicted by the defendant Homer Teaff died, done with the felonious intent to kill and murder Homer Teaff.

The evidence shows: That one Frank L. Hendricks, a negro cotton farmer, lived on Brushy Mountain in Muskogee county, adjoining the cotton farm and premises occupied by the defendant and his wife, negroes about 58 and 30 years of age, respectively, and that Hendricks had recently been in possession of both farms. That growing out of some business transactions the two men became bitter enemies. That a short time prior to this homicide the home of the defendant on these leased premises was burned while the defendant was in Muskogee, under circumstances indicating that the burning was done to conceal a robbery. After the fire benevolent neighbors and friends gave the defendant some galvanized sheet iron, from which he constructed a temporary shack home; they also gave to him and his wife some quilts, counterpanes, cooking utensils, and other articles. On and prior to the 27th day of June, 1922, the defendant and his wife had been chopping cotton on his premises, and while doing so they fastened the windows and locked the door of their tin shack.

On the 27th day of June this neighbor, Hendricks, made an affidavit for a search warrant, as follows:

"Frank L. Hendricks, being duly sworn, says: That John L. Welch, on the 22d day of June, 1922, in the county of Muskogee and state of Oklahoma, did then and there feloniously take, steal and carry away one 32 Winchester rifle, eyeglasses, one pair black slippers, two feather pillows, two quilts, one hair brush, one comb, one pair scissors, one spool white thread, of the value of $25, the property of said Frank L. Hendricks; and that he, the said Frank L. Hendricks, suspects that such property is concealed on the premises of John L. Welch, 9 miles southeast of Muskogee, on Brushy Mountain road, in a galvanized iron house.
"Frank L. Hendricks.

"Subscribed and sworn to before me this 27th day of June, 1922.
"Charles Wheeler,
"Judge of the City Court."

Upon this showing, on this same day, the judge of the city court issued a search warrant, directed to the sheriff, a part of which reads as follows:

"You are therefore commanded, in the daytime, to make immediate search of the person of John L. Welch, or in the premises situated at 9 miles southeast of Muskogee, on Brushy Mountain road, for the following described property: One 32 Winchester rifle, eyeglasses, one pair black slippers, two feather pillows, two quilts, one hair brush, one comb, one pair scissors, one spool white thread No. 50, and if you find the same, or any part thereof, to bring it forthwith before me at Muskogee."

The return on the search warrant is as follows:

"State of Oklahoma, Muskogee County—ss.:

"Return.
"I received this warrant on the 27th day of June, 1922, and executed the same as follows: By finding and seizing the following described property: Nothing found.

"I, ———, the officer by whom this warrant was ex-

ecuted, do swear that the above inventory contains a true and detailed account of all the property taken by me on this warrant.

"Subscribed and sworn to before me this 29th day of June, 1922.

"J. D. Robbins.
"Homer Teaff."

"Indorsed.

"Original Search Warrant. The State of Oklahoma v. ———, Defendant. Filed June 29, 1922. Marion Davis, Clerk of City Court."

The defendant sought to introduce this return in the manner following:

"Mr. Walker: We offer in evidence the return on the back of this search warrant, and ask that it be marked Defendant's Exhibit F.

"Mr. Crump: Object to it. I don't think it is competent.

"The Court: Sustained.

"Mr. Walker: Exception."

The refusal of the court to permit this return to go to the jury is assigned as error. The assignment will be treated later in the opinion.

Under authority of this search warrant, on the day it was issued, two deputy sheriffs, W. O. Manley and the deceased, Homer Teaff, went to the shack home of the defendant, while the defendant and his wife were in a field about a quarter of a mile distant chopping cotton, and in the absence of the defendant and his wife, according to the testimony of Manley, they broke into the shack and seized certain articles which they carried to the house of Hendricks, where Hendricks and his wife identified portions of the property seized as their property, whereupon these officers delivered and turned over to the Hendricks this property which they claimed. They then retraced their

steps and proceeded to the cotton field for the purpose of apprehending and arresting the defendant and his wife.

From this point on the recital of the facts and circumstances by different ones of the state's witnesses is confusing. Manley, the surviving deputy sheriff, testified in part as follows:

"Q. What did you do then or undertake to do, after you received the information as you testify, and after you found the property identified as stolen property in the Welch house? A. Undertook to arrest John Welch and his wife.

"Q. Where were they at the time you undertook to arrest them? A. In a cotton patch, hoeing cotton.

"Q. How far from the house? A. Right at a quarter of a mile from the house to where they were hoeing cotton, and directly north of the highway 50 steps.

"Q. Tell what you said to him—what occurred there at the time you made the arrest, until you got him arrested? A. I walked up in front of him, and he (Teaff) said for him to consider himself under arrest; he said we found some stuff, stolen stuff, identified by Hendricks, and would have to take him to town.

"Q. What did he say? A. He said, 'I haven't got anything in my house belongs to that son-of-a-bitch.' "

"Q. What did you do then? A. Told Homer to put the handcuffs on him.

"Q. Did he do it? Yes, sir."

If the search and seizure were made as above outlined and the testimony of this surviving officer is true, these two officers were justified in making this arrest without a warrant, under the provisions of section 2471, Comp. Stat. 1921, a portion of which provides that an arrest may be made without a warrant (1) when the person arrested has committed a felony, although not in the officer's presence; (2) when a felony has been committed and the officer has reasonable cause for believing that the person arrested

committed it; and (3) on a charge made, upon reasonable cause, of the commission of a felony by the person arrested. .

Where personal property is said to have been stolen, it is not incumbent upon a peace officer to first ascertain whether the person in whose possession it is found claims ownership in the property. That is a judicial function, an issue to be decided by some court.

In a case recently decided by the Supreme Court of the United States, Carroll v. United States, 45 S. Ct. 45 S. Ct. 280, 69 L. Ed. ......, in an opinion written by Chief Justice Taft, this statement occurs:

"If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient. . * * * If a constable or other peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts; or upon facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful.

"But, as we have seen, good faith is not enough to constitute probable cause. That faith must be grounded on facts * * * which in the judgment of the court would make his faith reasonable."

Owing to the divergent statements of witnesses for the state, just what took place after the defendant was arrested and manacled cannot be definitely stated, except that when the smoke of the battle cleared away one of the officers was dead, with a bullet hole through his heart and his skull crushed, and the handcuffed defendant and his wife, armed with a Winchester rifle and the empty revolver of the dead officer, had escaped into the jungles where they remained for a period of eight days, until

they secretly surrendered to an officer who spirited them away to Tulsa to avoid mob violence.

There is evidence tending to show that after the two officers had placed handcuffs on the defendant, the defendant disarmed Officer Teaff and shot him with his own (Teaff's) pistol; other portions of the state's testimony indicate that either the defendant or his wife struck Teaff with a hoe, fracturing his skull; still other testimony indicates that defendant's wife may have shot Teaff with her Winchester rifle; and from the testimony of another state's witness it appears that during the melee, during which shots were fired from three different guns, Officer Manley, in his effort to shoot the defendant while the defendant and Teaff were struggling, may have accidentally shot Teaff.

· Assuming that the officers had a right to make this arrest without a warrant and were not trespassers, if the defendant fired the gun shot which proved fatal he, of course, was guilty of murder; or manslaughter as the case may be; or if he struck the blow with the hoe which crushed Teaff's skull, a fatal wound, he was likewise guilty; if his wife, acting in conjunction with him, fired the fatal shot or struck the fatal blow, he would be guilty; or if the surviving officer accidentally killed the other in an attempt to subdue the defendant while engaged in the commission. of a felony, to wit, an attempt to escape and kill the arresting officer, the defendant would be guilty. So then, so far as the rights of the defendant were concerned, the direct cause of the death of the deceased would be immaterial.

Of the numerous assignments of error urged by the defendant, only such will be noticed as appear worthy of consideration.

The defendant claims that if the facts stated in the excluded written return to the search warrant are true,

the testimony of the surviving officer, Manley, concerning the search and seizure is false; and that if he testified falsely concerning the search and seizure, that might raise an inference that his testimony concerning the circumstances of the arrest or attempted arrest, upon which this conviction rests, might also be false.

This return shows three unusual features: (1) It bears the signature of one of the executing officers who lost his life within an hour or two after its execution; (2) it appears to have been verified two days after it was executed, and the sheriff, whose name appears thereon along with that of the dead officer, was not present at its execution; and (3) the signatures and verification are otherwise irregular. Section 2888, Comp. Stat. 1921, provides that a return to a search warrant shall be verified by the affidavit of the officer. Teaff, being dead, of course, could not verify this search warrant, and it may be that the sheriff assumed to and did make this verification after his death.

If the testimony of Manley is true, the officers were justified in making this arrest without a warrant. If, on the other hand, in the execution of this search warrant, nothing was found and no property seized, as shown by the officers' return on the search warrant, it would appear that the officers had no right to make this arrest without a warrant; that they were trespassers in this cotton field where the defendant and his wife were at work. If this be the case, the defendant and his wife had a right to forcibly resist an illegal arrest to the same extent as they might resist any other trespasser.

It would have been possible for the deceased, Teaff, to have made a return on this search warrant before going to the field to make this arrest. And if this return was true, the defendant may have committed no crime for which he would have been subject to arrest without a

warrant; raising an inference that this may have been a framed prosecution based upon false testimony. At any rate, whatever the facts may have been, the jury were entitled to the evidence shown by the return to assist them in determining whether these officers were justified in making this arrest without a warrant. The exclusion of the return, over the objection of the defendant, was error.

The defendant challenged the jury panel, on the ground that no negroes were drawn on the panel. He urged that nearly one-third of the inhabitants of Muskogee county are negroes; that many of them have large real estate holdings, and are owners of valuable personal property, and are listed on the tax rolls from which the jury list is drawn; and that for more than ten years last past no negro has been permitted to sit on a jury in a court of record in Muskogee county.

Upon this point, the defendant cannot predicate error upon discriminations against his race in other cases, extending over a period of previous years. The question is, Was there such discrimination in this particular case? Each of the three jury commissioners testified in the trial court, to the effect that all prospective jurors were selected as provided by statute, from the tax rolls, from men with whom one or another of the commissioners was acquainted; that the selections were made from those they considered best qualified, without any race discrimination; that the number of negroes on the tax rolls was not nearly so great, proportionately, as the number of white persons. These commissioners were examined at length, and all claimed, very positively, that no one was rejected for jury service on account of race.

A negro defendant cannot, as a matter of right, complain that there were no members of his race on the jury. He is, of course, entitled to a fair and impartial jury, with-

out discrimination. Under the showing made the court committed no error in refusing to suppress the panel. The trial court and this court will be bound by the uncontroverted showing made, affecting the particular case, despite the fact that the trial judge may have suspected from the general showing made and from his own observations as a trial judge that there has been discrimination against negroes for jury service in Muskogee county. We realize that it is inherently difficult to impeach jury commissioners on this issue, but the trial court must not decide this issue on mere generalities. Smith v. State, 4 Okla. Cr. 328, 111 P. 960, 140 Am. St. Rep. 688; McIntosh v. State, 8 Okla. Cr. 469, 128 P. 735; Franklin v. South Carolina, 218 U. S. 161, 30 S. Ct. 640, 54 L. Ed. 980; Peters v. State, 22 Okla. Cr. 245, 211 P. 428.

At the first trial of this cause  the jury failed to agree, and for that reason the jury was discharged and a new trial ordered. In the former trial the trial judge, Benjamin V. Wheeler, permitted the defendant to introduce evidence tending to show that the articles said to have been seized under authority of the search warrant, and for the alleged theft of which the defendant was arrested, were in fact the property of the defendant; that these were things which had been given to the defendant by benevolent neighbors after his house and personal effects had been consumed by fire.

In the second trial, which we are here considering, the trial court refused to permit the defendant to offer proof to show that the articles seized in fact belonged to him, upon the theory that the real ownership of the property was immaterial if the proof showed that the officers made the seizure upon a sufficient showing of reasonable or probable cause. Eliminating the written return of the officers, there was no showing made and no offer to show that the officers were apprised of the fact that the articles in question may have been donated to the de-

fendant. The officers might be justified in making an arrest solely upon information obtained from the affidavit for a search warrant, from the search warrant itself, and from information obtained in making the search. Under such circumstances, actual ownership in the defendant would not justify the defendant in resisting arrest, or in forcibly effecting his escape after arrest. But if the return of the officer had been admitted in evidence, as it should have been, proof of the true ownership in the defendant of the articles donated to him by his neighbors would be competent, if such proof tended to show that these officers may have had some knowledge of these facts, and that the arrest was not in fact made in good faith upon sufficient cause.

When a peace officer is about to make an arrest without a warrant, he should act upon all the information he has acquired. If a peace officer has information that one has committed a felony, and at the same time has information from another source that no felony was in fact committed, the information from both sources should be considered together to determine his right to make an arrest without a warrant.

The use of the term "probable cause" or "reasonable cause" itself imports that there may not be absolute, irrefutable cause. If a showing of absolute cause were a condition precedent to a lawful arrest without a warrant, no officer could safely make an arrest without a warrant, for if that were the rule, whenever a defendant so arrested secured an acquittal by a jury, the arresting officer could be prosecuted for false arrest. The rule is well stated in Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 3 A. L. R. 642, as follows:

"If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without warrant, although subsequent events prove

that no offense had been committed, or, if committed, that accused had no connection with it, where the statute authorizes arrest without warrant when the officer has reasonable grounds for believing that the person arrested had committed a felony, although not in his presence."

Defendant claims that the officers brought on the affray by beginning to shoot when there was no necessity for violence or cause to use firearms; that an officer must not use mortal force until there is a manifest necessity to do so, and that there was no such necessity here shown.

After the officers placed the handcuffs on the defendant, the defendant, according to his testimony, said to his wife, who was about 100 feet away, "Come, sweetheart, get the gun and come on," referring to a Winchester rifle leaning against a stump about 40 feet beyond where the wife stood; that as she went toward the gun Officer Manley fired at her; that she then ran to the gun and began firing at the officers. Daisy Welch, the wife, testified in part as follows:

"Q. Any body bothering your husband when they started off; that is to say, was there any trouble of any kind when they started off? A. The man that handcuffed him hit him over the head with his gun.

"Q. Did your husband say anything to you after they started off? A. After they started off he did.

"Q. What did he say then? A. Told me to get the gun, sweetheart.

"Q. What did you do then? A. I went to get it.

"Q. You went to get the gun, and then what happened? A. Man began shooting at me.

"Q. How many times did this man who shot at you fire at you before you reached the stump? A. Three times in succession and twice afterwards."

Officer Manley testified that after the defendant was manacled, the defendant in a loud and angry tone of voice

called to his wife to get the Winchester; that she ran to get the gun; that she was ordered to stop; that she fell and seized the gun and began shooting. Two other witnesses who were passing along the road nearby testified that the officer beckoned to her to stop before the shooting began.

This feature of the difficulty was covered in the instructions thus:

"The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention. An officer has no right, in the absence of resistance or flight, to use any force or violence upon one whom he is arresting for any offense. If you find from the evidence that the officers, or either of them, was using or attempting to use any force, violence, or a deadly weapon upon the defendant or his wife, and that neither of them was attempting to resist or flee, then, in that event, you are instructed that the defendant might use such force as a prudent man would use to protect his life, or to prevent the infliction of serious bodily injury upon him, or to protect the life of his wife, or the infliction of serious bodily injury upon her."

We think that this instruction correctly and sufficiently covered that issue.

The question of the qualifications of jurors who had formed or expressed opinions based upon common rumor or newspaper reports, as shown by the record, comes within the rule announced in Littrell v. State, 22 Okla. Cr. 1, 209 P. 184, based upon section 2678, Comp. Stat. 1921, wherein it was held that such opinions did not necessarily constitute a disqualification. The several other assignments of error are of minor importance, and are not sustained by the record.

On account of the exclusion from the evidence of the return on the search warrant, and, incidentally, of other evidence which might shed light upon the question of whether the arresting officers had probable cause to make

the arrest without a warrant, the cause is reversed and remanded.

The warden of the penitentiary is ordered to deliver the defendant to the sheriff of Muskogee county, to be detained by him pending further proceedings in the trial court.

DOYLE and EDWARDS, JJ., concur.