## SANK BURKS v. STATE.

No. A-9289. May 13, 1938.

(79 P. 2d 619.)

286

O. A. Brewer, of Hugo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Ralph K. Jenner, Co. Atty., of Hugo, for the State.

BAREFOOT, J. The defendant was charged with the crime of murder in Choctaw county on the 8th day of April, 1936, was tried, convicted of manslaughter in the first degree, and his punishment assessed by the jury at 30 years in the penitentiary, and from this judgment and sentence he has appealed.

The first assignment of error is that the trial court was without jurisdiction for the reason, the verification of the original complaint filed before the preliminary examination was not taken by the magistrate, but by a deputy court clerk. The complaint was sworn to before "F. M. Caldwell, Court Clerk, H. H. Wallace, Deputy." The contention being that such complaint should have been sworn to before the county judge, who was the acting examining magistrate; and that the verification by the court clerk rendered the same fatally defective. To support this contention defendant cites the cases of Bowes v. State, 7 Okla. Cr. 316, 126 P. 580; Ex parte Owen, 10 Okla. Cr. 284, 136 P. 197, Ann. Cas. 1916A, 522.

In the Bowes Case the original information had been filed in the county court charging the defendant with a misdemeanor. It was sworn to before a notary public. This was the information upon which the defendant was to be finally tried. In the case at bar the verification was of the complaint filed prior to the preliminary examination, and while the court, in the body of the opinion in the Bowes Case, stated that such verification would be unauthorized, this question did not enter into the disposition made of the case and no reference thereto is made in the syllabus. The court uses the expression that a notary public is an officer of the civil and commercial law and is unknown to the criminal law. Such is not true with reference to the court clerk, he being the clerk of the court who files and takes care of both civil and criminal cases and who administers oaths in all cases. State ex rel. v. Lauver, Judge, 26 Neb. 757, 42 N.W. 762.

In the Ex parte Owen Case, supra, which was an extradition proceedings, the affidavit upon which the extradition was based had been sworn to before a notary public. This court held that such verification was not sufficient. Defendant, in his brief, says:

"That this is the consensus of best authority is shown by the fact that the federal extradition laws have made such mandatory before extradition will lie."

In the first place the federal statutes, 18 U.S.C.A. § 662, requires as a basis for extradition "a copy of an indictment found or an affidavit made before a magistrate," which language is stronger than that of our own statutes, and as stated by Judge Furman, in the Owen Case (page 199):

"This proceeding being based upon a federal statute, we are not at liberty to follow the rule of construction which we apply to our own state statutes, because the common-law doctrine of a strict construction of penal statutes is adhered to by the Supreme Court of the United States, and, under this rule, no person can be deprived of a single right or punished for any offense unless the act complained of, and the proceedings thereon, come strictly within the letter as well as the spirit of the law."

Many of the statutes now in force in the state of Oklahoma have repudiated the old common-law doctrine of a strict construction of all proceedings in criminal cases. Some of these statutes are the following: Okla. St. 1931, § 2883, Okla. St. Ann. tit. 22 § 401; Okla. St. 1931, § 2891, Okla. St. Ann. tit. 22, § 409; Okla. St. 1931, § 3206, Okla. St. Ann. tit. 22, § 1068; Okla. St. 1931, § 3210, Okla. St. Ann. tit. 22, § 1273; Okla. St. 1931, § 2890, Okla. St. Ann. tit. 22, § 408. The early decisions of this court in construing some of the above statutes, and especially the opinions of Judge Furman, the first Presiding Judge of this court, have held that no such strict interpretation should apply. In the case of Price v. State, 9 Okla. Cr. 359, 131 P. 1102, Judge Furman says (page 1104):

"Under the old common-law doctrine of strictly construing criminal law and all proceedings in criminal cases, and that an indictment or information should be certain to a certain intent in every particular, the objection now urged to this information would undoubtedly be good. But these doctrines have long since been repudiated in the state of Oklahoma. It is true that an indictment should be reasonably certain as to the offense charged in order that the defendant may not be surprised and may be able to prepare to make his defense, and also to enable him to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense. This is all that a defendant is in reason and justice entitled to. If an indictment is couched in such language as to enable a person of common understanding to know what is intended, it is all that the law requires." Hughes v. State, 7 Okla. Cr. 117, 122 P. 554; Williams v. State, 14 Okla. Cr. 100, 167 P. 763; Turner v. State, 8 Okla. Cr. 11, 126 P. 452; Bowes v. State, 8 Okla. Cr. 277, 127 P. 883.

The courts have not been technical in construing the federal statutes as will be observed by a reading of the following cases: Compton v. Alabama, 214 U.S. 1, 29 S. Ct. 605, 53 L. Ed. 885, 16 Ann. Cas. 1098; In re Keller, D. C., 36 F. 681; Gugenhine v. Gerk, 326 Mo. 333, 31 S.W. 2d 1; Id., 282 U.S. 810, 51 S. Ct. 180, 75 L. Ed. 726; Ex parte Davis, 333 Mo. 262, 62 S.W. 2d 1086, 89 A.L.R. 589; United States v. Baumert, D. C., 179 F. 735; 25 C. J. 264.

The record in the case at bar reveals that the preliminary complaint was filed in the office of the court clerk on the 9th day of April, 1936. The defendant was brought before the court, acting as an examining magistrate, and at the time of his preliminary examination, April 13, 1936, although represented by counsel, no objection was raised as to the sufficiency of the complaint or of the verification thereof. After being bound over to the district court a petition for writ of habeas corpus was filed in this court asking for bail. In this petition he alleges that he had been charged with murder; that he had a preliminary hearing before the county judge as an examining magistrate, and had been bound

over to the district court, and in this petition no question was raised as to the sufficiency or validity of the complaint. The first attack upon the sufficiency of the affidavit was made when his case was called for trial in the district court, nearly seven months after his preliminary examination had been held, and he had been bound over to the district court. This court, in the case of Steiner v. State, 33 Okla. Cr. 298, 243 P. 1002, held:

"Where an unverified complaint charging a felony is filed before a magistrate, it is insufficient to authorize the issuance of a warrant, but, if a warrant is issued on such complaint, and a defendant apprehended and arraigned and submits to the jurisdiction of the magistrate, and has a preliminary trial on such complaint without challenging its sufficiency for lack of verification, such defect is waived."

But whether there was a waiver on the part of the defendant or not, we are of the opinion that the court did not err in overruling the motion of the defendant to quash the information filed in this case for the reasons above stated.

Section 2755, Okla. Stats. 1931, Okla. St. Ann. title 22, § 171, is as follows:

"When a complaint, verified by oath or affirmation, is laid before a magistrate, of the commission of a public offense, he must, if satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, issue a warrant of arrest."

Section 13442, Okla. Stats. 1931, Okla. St. Ann. Const., § 30, art. 2, provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

It will be noted there is nothing in the above statute which indicates the officer before whom the oath or affirma-

tion is to be taken. It could well be argued that the statute infers that the complaint when "laid before a magistrate" may have been previously verified by oath or affirmation taken before some other officer authorized to administer oaths. We certainly think it would be a most technical construction of the statute to say that the court clerk, or his deputy, who are not only authorized to take oaths, but who administer the oaths to witnesses, both in the trial of civil and criminal cases, is not such an officer that can properly swear a party to a complaint which is laid before the court as an examining magistrate. If any presumption is indulged, it should be that the court was present and directed that it be done. Under our statute, and for the further protection of the defendant, it is provided that no warrant shall issue for the arrest of a defendant until the county attorney shall indorse upon the information the following: "I have examined the facts in the foregoing complaint and recommend that a warrant do issue."

And this indorsement appears on the complaint as shown by the record in this case, duly signed by the county attorney of Choctaw county. We call attention to the following authorities upon this proposition (State v. Freeman, 59 Vt. 661, 10 A. 752) ; the court says (page 753) :

"As to the first point, it appears that an oath was taken, but it was by an officer authorized by statute to administer oaths (R. L. § 4555), other than the magistrate who issued the warrant. The constitution (chapter 1, art. 11) forbids the issuing of any warrant without oath or affirmation first made. State Treasurer v. Rice, 11 Vt. 339. Must such oath be taken before the magistrate issuing the warrant, or may it be taken before another magistrate? The statutes are silent on the point. The substantial thing required in the constitution is that the complaint be on oath. There is nothing in the form of the oath upon which the magistrate issuing the warrant is called upon to pass. Any form from which the idea can be collected is sufficient as 'taken and sworn before me.' 1 Bish. Crim. Proc., § 231; Com. v. Bennett, 7 Allen [Mass.] 533; Com. v. Wallace, 14 Gray [Mass.] 382. The complaint must adequately charge an offense. Bish

Crim. Proc., § 230, and cases there cited. Therefore the magistrate must see the complaint, in order to determine whether it furnishes sufficient foundation for a warrant. It stands like a capias in civil process issued upon affidavit. The right to the capias depends on compliance in the affidavit with the statutory requirements; therefore the magistrate must see it, in order to pass on its sufficiency, as held in Muzzy v. Howard, 42 Vt. 23; but the oath to it may be before another officer authorized to administer oaths. So we think it may be as to a complaint."

In the case at bar it appears from the record that the warrant was issued by the county judge on the day the complaint was filed, and that it recited the fact that the complaint upon oath had been made before him.

In the case of Carrow v. People, 113 Ill. 550, the court says:

"Construing the statute, as, perhaps, should be done, with reference to the sixth section of the Bill of Rights, which declares 'no warrant shall issue ·without probable cause,' the affidavit filed in this cause does show probable cause for filing the information, and the subsequent arrest of defendant. It is a matter of no consequence before whom the affidavit was made. It is not essential it should have been made before the judge of the county court that granted leave to present the information. In this case the affidavit was sworn to before a justice of the peace, and that is sufficient, if it· satisfied the judge to whom it was presented there was 'probable cause' for filing the information. More that that the law does not require for the security of the citizen against unwarrantable prosecutions. Myers v. People, 67 Ill. 503."

As a second assignment of error it is contended by defendant:

"That the verdict, judgment and sentence is contrary to law, on account of the fact, that a second information was filed after the first information was quashed and set aside, without an order of the court directing the filing of said second information."

The record discloses that an information was filed against the defendant on September 9, 1936, in Choctaw county, charging him with murder. On September 28, 1936, defendant filed a motion to quash the information:

"For the reason of the fact that the county attorney had no authority to file an information, because there has been, and is no transcript properly certified to of the proceedings of an examining magistrate."

The record does not disclose that this motion was acted upon by the court, but it does disclose that a transcript, including the original complaint with the findings and order of the magistrate duly indorsed thereon, had been filed in the district court on April 14, 1936. Defendant's contention seemed to be that certain testimony which was taken down in shorthand at the preliminary, and afterwards transcribed, was not filed in the district court. This testimony was filed in this court when application for bail was made, and afterwards, when the question was raised prior to the trial of the case, was filed in the trial court. Without any order being made on the above motion, the county attorney, on the 30th day of September, 1936, filed an information in the district court against the defendant, which is in practically the identical terms of the information filed on September 9, 1936. There is not only no substantial difference in the two informations, but they are literally the same. On October 1, 1936, defendant was arraigned, and was given 24 hours in which to plead, and was served in open court with a copy of the information with a list of the witnesses and their post office addresses indorsed thereon. This was the information filed September 30, 1936, and on which defendant was afterwards tried. On October 2, 1936, defendant filed a motion to quash the information filed on September 30, 1936, setting up the same grounds as in his motion filed on September 28, 1936, and the further reason: "That there is no properly verified complaint before a magistrate and no complaint whatever against him."

The defendant afterwards and on the 5th day of October, 1936, filed an additional written motion which he labeled "Motion to set aside and quash information and against jurisdiction." This motion set out more fully the same questions raised by the prior motion. It was signed and sworn to by the defendant. The defendant also on the 5th day of October, 1936, filed a general demurrer to the information. On this same date, and at the request of counsel for defendant, evidence was taken upon the hearing of the motion to quash. The state also took evidence and placed the defendant on the stand and asked him if he understood the contents of the motion to quash which he had signed and he said he did.

From the above statement we think it is clear that defendant waived any right he may have had for a ruling upon his motion to quash filed September 28, 1936. It has been held in the case of Lancaster v. State, 2 Okla. Cr. 681, 103 P. 1065:

"An information may be amended before announcing ready for trial without leave of the court."

Section 2830, Okla. Stats. 1931, Okla. St. Ann. tit. 22, § 304, provides:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial unless for good cause shown by affidavit."

From the above statement it will clearly be seen, there was no material prejudice to the right of the defendant by the filing of an amended information, for the very good reason that the terms of the information filed September 9, 1936, and September 30, 1936, were practically identical.

We do not think the court erred in overruling the motion to quash the information with respect to the filing of

the transcript of the evidence in the district court. No prejudice to the defendant is shown, and the court ordered it filed, and it was filed before the trial of the case and defendant's counsel had the benefit of the same at the trial.

Under defendant's third assignment of error, he complains of the fact that the defendant was placed upon the witness stand, and asked the question as above indicated on the motion to quash the information. This proceeding was had in the absence of the jury, and the only question asked the defendant was, if he understood the motion which he signed and to which he replied that he did. Nothing was asked him with reference to the facts involved in the case. We do not think there was any error in this ruling.

It is further contended under this assignment that defendant was prejudiced because there were no negroes on the jury. An examination of the record fails to disclose any effort on the part of defendant to show that there had been any discrimination against him. When this matter was presented to the court when the case was called for trial, no evidence was offered; when counsel for defendant made his motion, the county attorney said:

"The jury list as submitted by the jury commissioners is admitted in evidence. It is agreed that the jury list does not contain the name of any negro; that there are some negro personal tax payers in Choctaw county. By the Court: Overruled on that ground. By Mr. Brewer: Exception. We want to ask for a postponement or a continuance of the trial of the defendant until a proper jury can be selected. By the Court: Overruled, exception. Anything else? By Mr. Brewer: I imagine we will announce ready for trial."

It has often been held that the mere fact that the jury was composed solely of white men is no ground of challenge of the panel. Peters v. State, 22 Okla. Cr. 245, 211 P. 427; McIntosh v. State, 8 Okla. Cr. 469, 128 P. 735; Franklin v. State of South Carolina, 218 U. S. 161, 30 S. Ct. 640, 54 L. Ed. 980.

Defendant's fourth assignment of error is that the court admitted incompetent testimony. This objection is based upon the introduction of certain testimony of a witness by the name of Willie Jones, who testified at the preliminary examination, and who was not present at the trial, but whose evidence was taken and transcribed and read to the jury, over the objection and exception of defendant. The state, before introducing this evidence, placed witnesses upon the stand to show that a subpoena had been issued in Choctaw county for this witness and returned "Not found." Officers testified that they had searched for him at his usual place of residence; had made inquiry among his friends, and from what they could learn he had gone to Texas to pick cotton. One of the officers testified that he went to the town in Texas, where he had been informed the witness had gone, and that he could not locate him. Another officer testified to hearing that the witness had gone to Commerce, Tex., and was not to be found in Choctaw county. The stenographer, who took and transcribed the notes, testified they were correctly taken and transcribed. Counsel for defendant, and who represented him at the trial, was present at the preliminary examination, and cross-examined the witness. We do not believe that the court erred in permitting the introduction of the evidence of this witness under these circumstances. Mason v. State, 60 Okla. Cr. 398, 64 P. 2d 1238, 1240, and cases cited therein.

The other evidence offered by defendant, and of which defendant complained of not being permitted to introduce, was with reference to a certain officer having some trouble in attempting to arrest deceased on some former occasion. This testimony was unimportant, and nothing in the record shows that defendant had ever heard of this incident. His other objection to the introduction of the testimony has been examined, and we fail to find anything of a substantial nature, whereby defendant was denied any substantial right.

His fifth assignment of error is that the court refused to give certain requested instructions. Without lengthening this

opinion by quoting in full, the first requested instruction was, that if the defendant abandoned the conflict that he would then have the right of self-defense. The facts did not justify the giving of this instruction. There was no evidence to show that deceased had provoked the difficulty, and nothing to show that defendant had abandoned it. The second requested instruction was with reference to the committing of an overt act, and defining an overt act. The testimony of the defendant himself does not show an overt act on the part of the deceased. We have examined the instructions given by the court. They fully presented the law of self-defense, which was the defense presented by defendant. They were fair and protected his substantial rights. The proof on behalf of the state showed that defendant, after having a controversy with deceased over a card game at defendant's place of business, had sent another party to his home for his gun, and that it had been delivered to him; that he followed the defendant, making inquiry with reference to where he was, and finally located him in a pawn shop, where deceased had been examining revolvers, but did not purchase one, and the proof shows that they had been returned to the showcase; that defendant entered, and with gun drawn demanded that deceased put up his hands, and deliver to him certain money which he claimed deceased had picked up at a card game in defendant's place of business just prior to the difficulty; that he jammed the gun into deceased's stomach, and, when he handed him the money, he backed toward the door and shot deceased while he had his hands raised. Defendant himself testified that as he went to the door someone hollered "Look out," and that he turned and saw something shining in deceased's hand, and his gun fired; that he did not intend to shoot deceased. He did not even see a gun in deceased's hand, according to his own testimony, and does not testify of any overt act on the part of deceased. He was indeed fortunate that his counsel was able to have the jury only find him guilty of manslaughter in

the first degree. A verdict of murder would have been upheld under this evidence.

Finding no error, the judgment of the district court of Choctaw county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.