JEWELL CARRICK v. STATE.

No. A-7021.    Opinion Filed Jan. 12, 1929.
(274 Pac. 896.)

338

C. E. Corbett, for plaintiff in error.

Edwin Dabney, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and S. H. Lattimore, Co. Atty., of Muskogee, for the State.

DOYLE, P. J. (after stating the facts as above). Appellant, Jewell Carrick, was informed against for the murder of Henry Ausler. The jury found her guilty of murder and fixed her punishment at death. Motion for new trial was duly filed and overruled, and, in pursuance of the verdict of the jury, she was sentenced to suffer the punishment of death by electrocution as provided by law.

To reverse the judgment, an appeal to this court was duly perfected.

The first question presented is whether or not the trial court erred in overruling appellant's motion to quash the panel of jurors.

One of the grounds of the motion to quash is as follows:

"Fifth. Defendant states further that she is a person of African descent, known as 'Negro' and that the panel from which this jury was drawn and from which all the jurors and juries for this term was drawn or shall and must be drawn and selected for the trial of this cause, is composed exclusively of white persons or

members of the Caucasian race; and that all 'persons of color, or of African descent known as 'Negroes,' were excluded from serving on this jury and on all juries during this term of court by the jury commissioners of Muskogee County, Oklahoma, on account of their race and color and for no other reason.

"Sixth. That the aforesaid jury commissioners have for many years past wilfully, knowingly, illegally, wrongfully and by means of a well understood and clever scheme, excluded all persons of African descent known as 'Negroes' from serving on juries in this court and county solely on account of their race and color, all of which is a discrimination against this defendant, since she is a Negro, and a member of African descent, and that such discrimination aforesaid is a denial to her of the equal protection of the laws, and of her civil rights guaranteed and vouchsafed her by the Constitution and laws of the United States in the Fourteenth and Fifteenth Amendments thereof.

"Seventh. That Muskogee County has a large colored population constituting, so defendant is informed and believes, and avers, about one-fourth of the total population of said county, and constituting and composing about one-fourth of the qualified voters of said county under the Constitution and laws of the United States and the State of Oklahoma, who are qualified for jury service in said county and state, many of whom were selected by the government of the United States to serve as soldiers in the World's Great War and many of whom were sent across the seas and served the colors and government in the bloody fields of France and other foreign fields and fought bravely, nobly and fearlessly, and notwithstanding and regardless of this, and the still further fact that a large proportion of the persons of African descent known as 'Negroes' who are qualified and eligible for jury service, as aforesaid, and who have proven their worth as loyal citizens of the United States, the State of Oklahoma and the County and City of Muskogee, who pay taxes, work the roads, vote for, and promote a campaign for bonds for both county and municipal improve-

ment, in Muskogee County, Oklahoma, and last but not least, lend their each and every effort to promote peace, happiness and prosperity in their respective community and to keep down strife, confusion and disorder between the races and members of society, the jury commissioners of this county wilfully, knowingly and purposely refused, failed and neglected to select any person or persons whomsoever of the descent hereinabove mentioned, to-wit: 'African descent,' and designate to serve as jurors, solely on account of their race and color, and that such refusal and exclusion, as aforesaid, is a denial to the defendant of the equal protection of the law as guaranteed to her by and under the Fourteenth and Fifteenth Amendments of the United States Constitution and the laws of the State of Oklahoma."

In support of the motion to quash the panel, appellant called as a witness Mr. Ed Sweeney, who testified that he was a member of the jury commission and participated in the selection of jurors for this term of court; that the list of jurors were taken from the tax rolls.

He further testified as follows:

"Q. Did you see any names of members of the Colored race on either of the lists? A. I presume that there was quite a number of them there, but I don't know.

"Q. Will you say that you did find the names of Negroes on the list? A. I don't remember recognizing any. The book was marked with a 'C,' those I understand were Colored.

"Q. Did you or any of your associates select any of those names marked with a 'C' after this Colored People, as members of this jury? A. Not that I know of."

Mr. Maurice Hopping, called as a witness, testified that he was a member of the jury commission and participated in the selection of jurors for this term of

court; that the list of jurors were selected from the tax rolls. He further testified as follows:

"Q. Do you know whether there was on that list anything marked to distinguish the members as to race? A. There is in one instance.

"Q. What instance? A. Some of them have marked behind them a small 'C' and another instance where I marked a cross myself, and there were some that didn't have any mark to indicate whether they were colored men or white men.

"Q. You did find something to indicate the members of race? A. I did.

"Q. Did you, in going over that list that you had, did you place on there names of any where they were names of Negroes, or where there was anything to indicate the race? A. Not if I knew it.

"Q. Why didn't you? A. Because I never saw a member of the colored race qualified as a juror in this state, and I don't believe, taking them as a whole, that Negroes are competent to serve as jurors.

"Q. Then you are prejudiced against the Negro race? A. No, sir. I don't believe they would be competent to try one of these cases. I don't believe they would be competent to try one of their own race or any one else.

"Q. That's all."

The evidence in support of the motion further shows that a large number of the colored population of Muskogee county possessed the qualifications of jurors. It also appears that the proof offered in support of the motion was undisputed.

The court, after hearing the evidence in support of the motion to quash the panel, overruled said motion. Exception reserved.

It has been repeatedly held by the Supreme Court

of the United States that, when a person of African descent, charged with crime, challenges the array or panel of jurors on the ground of the exclusion of citizens of the African race therefrom, he must affirmatively prove that such citizens were excluded solely because of their race or color. Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497; Brownfield v. South Carolina, 189 U. S. 426, 23 S. Ct. 513, 47 L. Ed. 882; Tarrance v. Florida, 188 U. S. 519, 23 S. Ct. 402, 47 L. Ed. 572.

Upon a careful consideration of all the evidence offered in support of appellant's challenge to the panel, we cannot resist the conclusion that the trial court committed reversible error in overruling the motion to quash the panel of jurors, because it was shown and admitted that the aforesaid jury commissioners had purposely excluded from the jury list because of their color citizens of the African race, qualified to perform jury service.

It is well settled that a denial to citizens of the African race solely on the ground of their race and color of the right or privilege accorded to white citizens of participating as jurors in the administration of justice is a discrimination contrary to the Fourteenth Amendment of the Constitution of the United States, which declares that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Constitution of the state of Oklahoma declares that: "The Constitution of the United States is the supreme law of the land." Const. art. 1, § 1.

The Supreme Court of the United States has repeatedly held that a person of African descent accused of crime is denied the equal protection of the laws, contrary to the guaranty of the Fourteenth Amendment, if citizens of the African race are excluded from service upon the grand jury returning the indictment against him or the petit jury before whom he is placed upon trial solely because of their race or color. Strauder v. W. Va., 100 U. S. 303, 25 L. Ed. 664. And it makes no difference whether such exclusion because of race and color is effected by a statute or by the arbitrary and wrongful acts of the officers in the administration of the law. Gibson v. Mississippi, 162 U. S. 565, 16 S. Ct. 904, 40 L. Ed. 1075; Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839.

The fact that there were no persons of African descent upon the list of jurors selected by the jury commissioners or summoned for the purpose of trying appellant does not of itself show the exclusion of such persons solely because of race or color. Martin v. Texas, supra.

In Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676, the Supreme Court of the United States, speaking by Mr. Justice Strong, said that: "A state acts by its legislative, its executive, or its judicial authorties. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the

state. This must be so, or the constitutional prohibition has no meaning."

In Martin v. Texas, 200 U. S. 319, 26 S. Ct. 338, 50 L. Ed. 498, the Supreme Court of the United States, speaking of Mr. Justice Harlan, said: "For it is the settled doctrine of this court that 'whenever, by any action of a state, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the 14th Amendment of the Constitution of the United States.' Carter v. Texas, 177 U. S. 442, 447, 44 L. Ed. 839, 841, 20 S. Ct. 687; Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Neal v. Delaware, 103 U. S. 370, 397, 26 L. Ed. 567, 574; Gibson v. Mississippi, 162 U. S. 565, 40 L. Ed. 1075, 16 S. Ct. 904; Rogers v. Alabama, 192 U. S. 226, 231, 48 L. Ed. 417, 419, 24 S. Ct. 257."

Speaking by Mr. Justice Harlan in Neal v. Delaware, supra, the Supreme Court of the United States said: "We repeat what was said" by us in Va. v. Rives, 100 U. S. 322, 25 L. Ed. 667, "that while a colored citizen, party to a trial involving his life, liberty, or property, cannot claim, as matter of right, that his race shall have a representation on the jury, and while a mixed jury, in a particular case, is not within the meaning of the Constitution, always or absolutely necessary to the equal protection of the laws, it is a right to which he is entitled, 'That in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them, because of their color.' "

In Smith v. State, 4 Okla. Cr. 328, 111 P. 960, 140

Am. St. Rep. 688, this court said: "The Fourteenth Amendment to the Constitution of the United States does not require the jury commissioners or other officers charged with the selection of juries to place Negroes upon the jury list simply because they are Negroes. The allegation that the jury was composed solely of white men does not violate the Fourteenth Amendment to the Constitution of the United States, and proof of that fact would not support the motion. The ground upon which the decisions of the Supreme Court of the United States rests is not that Negroes were not selected to sit upon juries, but that they were excluded therefrom solely on account of their race or color. In other words, there is no law to compel the jury commissioners or other officers of the court to select or summon Negroes as jurors. They can select any persons whom they regard as competent to serve as jurors without regard to their race or color, but the law prohibits them from excluding Negroes solely on account of their race or color."

And see McIntosh v. State, 8 Okla. Cr. 469, 128 P. 735.

Upon the record before us we are of opinion that appellant was denied the equal protection of the laws contrary to the guaranty of the said Fourteenth Amendment.

Other questions are argued by counsel, but, in the view we have taken of the one considered, they are not important. In view of a trial before another jury, we will not comment on the evidence.

For the error indicated, the judgment appealed from is reversed, and the cause remanded to the trial court for further proceedings according to law.

The warden of the state penitentiary will surrender

appellant, Jewell Carrick, to the sheriff of Muskogee county, who will hold her in custody until she be discharged or her custody changed by due course of law.

EDWARDS and DAVENPORT, JJ., concur.