## ROBERT HOLLAND v. STATE.

No. A-9229.   April 9, 1937.
(67 Pac. [2d] 58.)

J. R. Charlton and C. E. Robertson, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J. Plaintiff in error, Robert Holland, was convicted of murder in the district court of Washington county upon an information filed in said district court March 7, 1936, charging that in said county on or about 30th of December, 1935, he did kill and murder one Henry Cobb by shooting him with a pistol. The jury fixed his punishment at death. A new trial was denied and in pursuance of the verdict of the jury he was sentenced to suffer the punishment of death by electrocution as provided by law.

From the judgment pronounced and entered June 3, 1936, he appealed by filing in this court on November 17th a petition in error with case-made.

It appears that the homicide was committed on the night of December 30, 1935, in the city of Bartlesville; that the deceased, Henry Cobb, a white man, was shot and killed by the defendant, Robert Holland, a colored man.

When the case was called for trial, the defendant filed a challenge to the array and motion to quash the panel of jurors upon the ground of exclusion of negroes from juries in Washington county; that the defendant, a colored man, was discriminated against on that account and that no colored man was summoned to serve on the jury panel

from which jurors were selected to try the case; and that no negroes or persons of African descent had ever served on any jury in Washington county, having been excluded solely because of their race and color.

The grounds of the defendant's challenge to the array and motion to quash the jury panel are in part as follows:

"That said Robert Holland is a person of African descent known and designated as a Negro.

"That pursuant to the order of the judge of the district court of Washington county, the clerk thereof did draw from the jury box of said district court 36 names theretofore placed in the jury box by said court clerk, from the list certified to him by the jury commissioners of said county.

"This defendant states that he is advised and believes that all of the 36 names drawn by said clerk as aforesaid are the names of white persons, and that all the names remaining in said jury box after said thirty-six were drawn, were and are the names of white persons.

"Further, that in Washington county, long prior to the time of the selection of the current jury list aforesaid and at all times since, there had been, were, and still are numerous Negro citizens of the state of Oklahoma and residents of said county who in every respect had been, were, and still are qualified to serve as petit jurors in said county; nevertheless, this defendant states that he has good and sufficient reason to believe, and does verily believe, and therefore avers that the said jury commissioners in selecting the current jury list aforesaid, unlawfully and in violation of their respective oaths of office and of the Constitution of the United States and the Constitution of Oklahoma, did exclude from said list all qualified Negroes, members of the colored race and of African descent, solely and only on account of their race, color and previous condition of servitude and for no other reason.

"Further, that at all times it has been, was, and still is the custom in said Washington county to use white men exclusively for petit jury service in any and all cases, including trials of felonies; and in selecting said current jury list, the said jury commissioners followed said custom, and excluded qualified Negroes from said list, because of and on account of their race, color and previous condition of servitude.

"That by reason of the unlawful exclusion of all qualified Negroes from the current jury list aforesaid, the defendant herein, Robert Holland, a Negro, has been greatly prejudiced and has been denied due process and the equal protection of the laws in violation of the Constitution of the United States, and the laws of the United States enacted pursuant thereto, and the Constitution of Oklahoma and the laws of Oklahoma enacted pursuant thereto."

The motion concludes with a prayer that:

"A hearing be had upon his said motion, and upon consideration thereof, the panel of jurors summoned in this court be quashed and discharged, and that a panel be summoned according to law, and said defendant will ever pray."

In support of the motion to quash the panel, appellant called as witnesses the jury commissioners, the court clerk, and Thomas Abner Garcia, a negro, then it was stipulated that eight other negroes would testify to the same effect as witness Garcia.

Russell Cantwell, a jury commissioner and Bartlesville Chamber of Commerce secretary, testified that the population of Washington county was approximately 28,-000, 10 per cent. of which consisted of negroes, that in selecting the current jury list from the tax rolls, he did not discuss with the other commissioners whether negroes would be placed on the jury list, that he was acquainted

with many negroes in the county. He was then asked: "With your knowledge of the qualifications of a juror, do you know any negroes in Bartlesville, who in your opinion possess the qualifications of jurors?" And answered: "In my opinion, yes, sir."

He further testified that he did not exclude negroes from the jury list because they were not of good moral character, or justices of the Supreme Court or Criminal Court of Appeals, or judges of courts of record in the state, or peace officers, licensed attorneys, or habitual drunkards, or afflicted with bodily infirmities amounting to a disability, or who had been convicted of any infamous crime or had served a term of imprisonment in the penitentiary. That he had lived in Bartlesville ten years and served as a juror the previous year, that he had never known of a negro sitting on a jury in the county.

Al Pettigrove, jury commissioner, testified he had lived in Washington county 25 years, that he did not remember ever seeing a negro on any jury in this county; that he had not selected any negroes on his list, though he knew some who were eligible for jury service.

That he did not exclude any person from the jury list because of race or color.

W. E. Lee, jury commissioner, testified he had lived in Washington county 35 years, had been a district court bailiff, a justice of the peace for eight years, often at other times had occasion to be present in court, but never did see a negro serve on a jury in Washington county, that he selected about 75 names on the list and did not exclude any man from that list because he was a negro.

Robert E. Lee testified that he had been district court clerk during the last seven or eight jury terms of court,

and knew all of the jurors in attendance, that he did not see a negro among the jurors, and never did see a negro juror in any of the courts of Washington county.

Thomas Abner Garcia, a negro, testified that he was a property owner and taxpayer and resided in Washington county, and had lived in Oklahoma since 1923, formerly lived in Texas, where he had served as a juror, that he was widely acquainted with members of his race in the county, and knew 25 or 30 who were taxpayers, and did not know of any negroes who had served as a juror.

It was then stipulated that eight other negroes who had been sworn as witnesses would testify to the same effect as the witness Garcia.

There was no testimony offered on the part of the state. The court, after hearing the argument of counsel, announced: "I am constrained to overrule this motion." Exception allowed.

Upon the record before us and the undisputed facts as shown by the evidence offered in support of the defendant's challenge to the panel, and motion to quash duly verified by the oath of the defendant, we are of the opinion that the defendant was denied due process and equal protection of the laws.

It is well settled that a denial to citizens of the African race solely on the ground of their race and color of the right or privilege accorded to white citizens of participating as jurors in the administration of justice is a discrimination contrary to the Fourteenth Amendment of the Constitution of the United States, which ordains that:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof,

are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Carrick v. State, 41 Okla. Cr. 336, 274 Pac. 896; Smith v. State, 4 Okla. Cr. 328, 111 Pac. 960, 140 Am. St. Rep. 688.

The Supreme Court of the United States has repeatedly held that discrimination against persons qualified to serve as jurors, solely because of their race or color, is a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment, and that such a discrimination entitles a person of the race against which it is practiced to interpose a challenge to the jury panel when he is a party to an action to be tried before a jury drawn from the panel. See Martin v. Texas, 200 U. S. 316, 319, 26 S. Ct. 338, 50 L. Ed. 497, 498.

In the case of Hollins v. State of Oklahoma, 295 U. S. 394, 55 S. Ct. 784, 79 L. Ed. 1500, on appeal from this court [Hollins v. State, 56 Okla. Cr. 275, 38 Pac. (2d) 36], the opinion per curiam, is as follows:

"Petitioner was convicted in the district court of Okmulgee county, Okla., upon an information charging rape. At the trial, petitioner challenged the jury panel upon the ground that negroes for a long period had been excluded from jury service in that county solely on account of their race or color, and that this discrimination had deprived petitioner of the equal protection of the laws in violation of the Constitution of the United States. Evidence was taken by the trial court upon this issue, the challenge was overruled, and petitioner excepted. Upon appeal, the federal question was presented to the Criminal Court of Appeals and was decided against petitioner. This court granted a writ of certiorari, April 1, 1935, 294 U. S. 704, 55 S. Ct. 636, 79 L. Ed. 1240.

. "From its examination of the evidence, the court is of the opinion that the case calls for the application of the principles declared in Neal v. Delaware, 103 U. S. 370, 397, 26 L. Ed. 567 [574], and Norris v. Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074.

"The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion."

In Norris v. Alabama, above cited, the fifth syllabus reads as follows:

"Evidence, upon a motion to quash a trial venire composed solely of white men, in a criminal prosecution of a negro, that, in a county of 46,176 population of whom 8,311 are negroes, for at least a generation no negro had been called for jury service, that no negro was placed on the present jury roll, although there were many negroes in the county who were qualified for jury service, showing a long-continued, unvarying and wholesale exclusion of negroes from jury service, establishes a discrimination forbidden by the equal protection clause of the Fourteenth Amendment, and requires the quashing of the venire, notwithstanding general testimony by a member of the jury board that negroes were not excluded from the jury list and that in compiling the jury roll he did not consider race or color."

Mr. Chief Justice Hughes in delivering the opinion of the court said:

"The testimony of the commissioner on this crucial question puts the case in a strong light. That testimony leads to the conclusion that these or other negroes were not excluded on account of age, or lack of esteem in the community for integrity and judgment, or because of disease or want of any other qualification. The commissioner's answer to specific inquiry upon this point was that negroes were 'never discussed.' We give in the margin quotations from his testimony.

"We are of the opinion that the evidence required a different result from that reached in the state court. We think that the evidence that for a generation or longer no negro had been called for service on any jury in Jackson county, that there were negroes qualified for jury service, that according to the practice of the jury commission their names would normally appear on the preliminary list of male citizens of the requisite age but that no names of negroes were placed on the jury roll, and the testimony with respect to the lack of appropriate consideration of the qualifications of negroes, established the discrimination which the Constitution forbids. The motion to quash the indictment upon that ground should have been granted."

It follows from what has been said, and the foregoing authorities, that the defendant was denied the equal protection of the laws contrary to the guaranty of the aforesaid Fourteenth Amendment.

Other questions are argued by counsel, but, in the view we have taken of the one considered, they are not important. In view of a trial before another jury, we will not comment on the evidence.

For the error indicated, the judgment of the district court of Washington county herein is reversed and the cause remanded for a new trial.

The warden of the state penitentiary will surrender appellant, Robert Holland, to the sheriff of Washington county, who will hold him in custody until he shall be discharged or his custody changed by due course of law.

DAVENPORT, P. J., and BAREFOOT, J., concur.