## LONZO DIXON v. STATE.

No. A-10953.  May 4, 1949.

(206 P. 2d 231.)

206

W. L. (Bill) Steger, of Durant, and Roy G. Baker, of Sherman, Tex., for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. This is an appeal by Lonzo Dixon, a negro, the defendant below, who was charged, tried and convicted by a jury that fixed his punishment at five years in the State Penitentiary and upon which verdict the trial court pronounced judgment and sentence accordingly.

The victim of the assault, J. C. Farrington, was a commissioned deputy sheriff, who, together with two other officers, saw the defendant and another person drinking whisky, in a public place, and after putting the defendant under arrest and while seeking to search him, the defendant shot the said Farrington with a pistol with the intent to kill the said officer. The defendant does not question the sufficiency of the evidence to sustain the conviction.

In his brief he presents three propositions: First, that the court erred in overruling the defendant's challenge to the array and motion to quash the panel of jurors. Second, he contends that the court erred in overruling his motion to suppress the evidence of his signed confession, and, third, he urges the court erred in denying his motion for a mistrial because of certain testimony produced by Cliff Keirsey, sheriff of Bryan county, a witness for the state. The first contention is predicated upon the proposition that defendant was a negro man from the adjoining State of Texas, and was tried in the district court of Bryan county, Okla., in the city of Durant. He contends that the record discloses that no negroes have been called for jury service in Bryan coun-

ty and by reason thereof the defendant was denied his constitutional rights. To support this contention he relies upon Holland v. State, 61 Okla. Cr. 215, 67 P. 2d 58; Carrick v. State, 41 Okla. Cr. 336, 274 P. 896; Smith v. State, 4 Okla. Cr. 328, 111 P. 960, 140 Am. St. Rep. 688; Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497, 498; Hollins v. State, 295 U. S. 394, 55 S. Ct. 784, 79 L. Ed. 1500, on appeal from this court, Hollins v. State, 56 Okla. Cr. 275, 38 P. 2d 36; Norris v. Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074. In Holland v. State, supra, 61 Okla. Cr. 215, 67 P. 2d 58, this court said:

"It is well settled that a denial to citizens of the African race solely on the ground of their race and color of the right or privilege accorded to white citizens of participating as jurors in the administration of justice is a discrimination contrary to the Fourteenth Amendment of the Constitution of the United States, which ordains that:

" 'Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' Carrick v. State, 41 Okla. Cr. 336, 274 P. 896; Smith v. State, 4 Okla. Cr. 328, 111 P. 960, 140 Am. St. Rep. 688.

"The Supreme Court of the United States has repeatedly held that discrimination against persons qualified to serve as jurors, solely because of their race or color, is a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment, and that such a discrimination entitles a person of the race against which it is practiced to interpose a challenge to the jury panel when he is a party to an action to be tried before a jury

drawn from the panel. See Martin v. Texas, 200 U. S. 316, 319, 26 S. Ct. 338, 50 L. Ed. 497, 498."

In Smith v. State, supra, this court said:

"(a) When a negro is charged with violating the criminal laws of a state, and when under oath he challenges the panel of the jury upon the ground that the commissioners who selected such jury and the sheriff who summoned them had excluded from the jury all persons of African descent solely on account of their race and color, and offers evidence to sustain this ground of challenge, the trial court should hear the evidence, and if it is of the opinion that as a matter of fact negroes were intentionally excluded from the panel, solely upon the ground of their race and color, said motion should be sustained. This has been repeatedly decided by the Supreme Court of the United States, and all state tribunals are bound thereby.

"(b) The mere fact that the jury was composed solely of white men will not be ground for challenge in such case. There is no law requiring that negroes shall be selected to sit upon juries. The only law upon this subject is they must not be excluded therefrom solely on account of their race or color.

"(c) Officers charged with the duty of selecting and summoning jurors can exercise their own discretion in selecting those persons who, in their judgment, are competent and qualified to serve as such jurors, provided, that they do not exclude competent persons who are negroes, solely on account of their race and color."

This court has closely adhered to the Supreme Court's pronouncements on this subject, as an examination the cases relied on by the defendant discloses. In the body of the opinion in Smith v. State, supra, 4 Okla. Cr. at page 332, 111 P. at page 961, 140 Am. St. Rep. 688, the court said:

"The ground upon which the decisions of the Supreme Court of the United States rest is not that negroes were

not selected to sit upon juries, but that they were excluded therefrom solely on account of their race or color. In other words, there is no law to compel the jury commissioners or other officers of the court to select or summon negroes as jurors. They can select any persons whom they regard as competent to serve as jurors without regard to their race or color, but the law prohibits them from excluding negroes solely on account of their race or color. * * * There is no law requiring an officer to place negroes on the panel simply because they were negroes. It is his duty to select the best jurors without regard to race or color. When this is done, the law is satisfied."

In every such case the burden is upon the movant to sustain his motion to quash the jury panel, as was said in Hollins v. State, 56 Okla. Cr. 275, 38 P. 2d 36, 37:

"The burden is on defendant to show by competent evidence that negroes were actually excluded from the jury panel solely because they were negroes, and where the evidence fails to sustain this allegation it is not error for the trial court to overrule the challenge to the panel for such cause."

See also Houston v. State, 63 Okla. Cr. 49, 72 P. 2d 526. Each such case must, therefore, be determined by its own facts.

In the case at bar the evidence in relation to this question reveals the following situation: The population of Bryan county is approximately 40,000 of which between 1,000 and 1,200 are negroes and of whose numbers some 20 or 30 are listed on the personal tax rolls. The testimony of Judge Paul, who was judge of the district court of Bryan county for some ten years prior to the present incumbent, reveals that he instructed his jury commissioners not to discriminate against people of color because of their color or race, and further instructed that some of them be included in the jury panel. His testimony further discloses that during the time he was

judge two or three negroes were always included on the jury panel.

The testimony of Ollie James, the jury commissioner who selected the array, from which the panel was drawn herein, in part, was as follows, to wit:

"Q. You are a resident of Durant? A. Yes, sir. Q. Have you been for many years? A. Yes, sir. Q. If you are a jury commissioner here, when were you appointed? A. Yes, sir, I am on the jury commission. Q. Did you, with the other two commissioners, draw a jury on the order of the judge? A. Yes, sir. Q. In drawing that, did you draw any that you were informed were negroes, colored? A. We did. Q. How did you draw these? A. From the tax roll, personal tax roll. Q. Did you exclude any one on account of their race, color or nationality? A. We did not. * * * Q. How many negro jurors were placed on the panel you recently drew? A. I don't know. I know there were three or four, or may be five. I don't remember. Q. Did you aid in getting any negro on the list? A. I did. I assisted the other parties on the tax rolls, because I didn't know the personal taxpayers in their districts; and I didn't know of any one in district one that I could have selected, because there are not many in district one. Q. How many names were on the list? A. 200. Q. Why weren't more negroes placed on the list? A. Well, in selecting these names, we just went down the list, and took them off the tax rolls; those that paid personal taxes, and after we made up the list, we didn't go any further, after we got the amount of names were supposed to call. Q. How did you jury commissioners arrive at the number of three or four to be put on the list? A. We were told in our instructions that there should be negroes put on the list. * * * Q. Was it suggested how many to put on? A. No. That they were not to be discriminated against, and were to be chosen as jurors. Q. Do you know the names of the negro jurors. A. No, I don't. I could not give you the names. Q. Who selected them? A. The two com-

missioners in districts two and three. They knew them personally, and knew they were qualified."

Moreover, the record reveals that the present judge, Sam Sullivan, instructed the jury commissioners not to exclude one negro from the rolls when they made up the jury lists and that on every panel there were from three to four to five negroes whose names were placed in the box from which the jury panel was drawn. The record further reveals that the array from which the jury was impaneled was taken from the tax rolls as provided by Title 38, O.S.A. 1941 § 1, without discrimination, design or plan to eliminate people of color from the jury panel; that the names were placed in a box and that the sheriff and the court clerk without regard to the identity of the names in the box drew the jury panel therefrom. In addition to the foregoing, the record is clear that the sheriff and court clerk drew the names of the jurors for the panel from the box containing the 200 names selected by the jury commissioners, without regard to identity, race or color. Finally, the record conclusively reveals that the court, the jury commissioners, the court clerk and the sheriff not only did not exclude persons of the African or negro race from the jury panel herein in question because of their race or color but to the contrary they meticulously observed the law in an effort to avoid such objection to the panel by inclusion of three to five negroes on the panel of 200 names herein involved. On this, and other corroborative, evidence, the court overruled the motion to quash the array and the panel. In this connection we cannot but observe that when measured by the relative number of whites and colored in the county, the representation of colored to whites on the array and the panel was fair. But in any event, as hereinbefore indicated, the burden of proving discrimination and prejudice, even in the total absence of colored per-

sons on the jury is upon the movant. Peters v. State, 22 Okla. Cr. 245, 211 P. 427. To sustain the burden the defendant must show that negroes were excluded because of race or color. The evidence herein is wholly insufficient to support such a contention, in fact, it clearly establishes due process of law, not a denial thereof. The situation confronting us is not such as was presented in Holland v. State, supra, and urged as a parallel situation to the case at bar, but Holland v. State presented a situation wherein it appears that the jury commissioners over a long period of years consciously wrought discrimination through omission to put negroes on the panel. In that case it is disclosed that they deliberately selected only white jurors and ignored negroes who were qualified for jury service. Such conduct might be termed intentional ignorance but such is not the situation in the case at bar. The situation herein presented is one where a studied effort was made to comply with the requirements of the law. Under these conditions the trial court correctly refused to sustain the motion to quash the array and panel.

The second contention of the defendant is that the court erred in not sustaining his motion to suppress defendant's confession when offered in evidence. This contention is predicated upon the proposition that, defendant testified that the confession in question was taken from him by Sheriff Keirsey, the sheriff of Bryan county, Okla., and Officer Robnett of Texas, while he was in custody of the Texas authorities in Denison, Tex. He testified he gave the confession solely because of fear, fear engendered by a beating administered by a third Texas officer whose identity was unknown to him. He testified that the beating was given him about five minutes before the officers aboved named took his statement

from him. He testified that the officers taking the state-ment did not beat him or threaten or seek to intimidate him in any way. He said, however, when he made the statement he was then in fear of his life, and that he signed the statement because he thought he had to, be-cause he had been informed before he was confronted by Sheriff Keirsey and Officer Robnett that he would be beat-en again if he did not sign it. At the time he gave his testimony, he said his face was still sore from the beat-ing and said "I can't hardly hear from that day until today." He said he was hit all over the head. There was no attempt to refute the evidence of the defendant thus given other than the testimony of Sheriff Keirsey and Officer Robnett to the effect that when they took his statement "he appeared to be calm". The state of-fered no evidence that he bore no marks of having sus-tained a beating. In fact, the record discloses a studied attempt only to show that the defendant was not abused by Sheriff Keirsey and Officer Robnett who took the statement after the alleged beating was administered by a third unidentified officer. Other than hereinbefore in-dicated, the record does not contain a single line of proof contrary to the defendant's claim. It stands uncontra-dicted. We can only conclude that if he had not been beaten, as he testified, the state certainly would have directed some interrogation to the officers who took the statement of the defendant relative to his appearance and condition, but the record is silent thereto, other than that he was calm. The fact that he was calm when he made the statement was no indication of the fact as to whether he had or had not sustained a beating. He could have have been calm and still his head may have borne the marks of a severe beating. The fact that he was calm constitutes little or no refutation of his testimony. The state's silence relative to the proposition that an undis-

closed officer beat him while he was in jail at Denison, Tex., cannot be charged to the ignorance of the defendant's claim, for the state was clearly apprised of his charge in his testimony in chief. The state's silence and studied efforts to avoid any reference thereto gives credence to his story. The court will take judicial notice of the fact that Denison, Tex., is only about a 30-minutes drive from Durant, Okla., where this case was tried. It would have been so unsurmountable obstacle or undue hardship or unnecessary delay in the proceeding for the state to have called the officers who were present in the jail in Denison, Tex., at the time the alleged beating was supposed to have been administered to refute the defendant's evidence in relation thereto, but this was not done. Though outside the jurisdiction of the trial court and not subject to its orders, under the conditions, we are sure some of them would have responded to the call, and would have testified as to the treatment accorded the defendant while in their custody. In any event, his positive testimony in relation thereto stands, for all practical purposes, unchallenged. Under these conditions, we are bound to hold the confession was involuntarily obtained and inadmissible in evidence as a matter of law under the authority of Pressley v. State, 71 Okla. Cr. 436, 112 P. 2d 809; Lyons v. State, 77 Okla. Cr. 197, 138 P. 2d 142, 140 P. 2d 248, wherein this court said [71 Okla. Cr. 436, 112 P. 2d 810]:

"Where a defendant testifies in a hearing on the competency of a confession that he signed the confession because of threats of harm and blows which were struck him by an officer having him in custody, and the officer alleged to have committed the abuse is present in court and does not testify, and there is no testimony to refute the statements, of the defendant, the alleged confession is inadmissible as a matter of law."

But under the record herein involved the admission of the said confession constitutes only harmless or technical error. It is harmless for the reason that the other evidence offered by the state clearly and sufficiently establishes the charge as laid against the defendant, without the aid of the confession. This evidence discloses that he was seen drinking whisky in a public place, that the officers placed him under arrest and he resisted arrest to the extent that he pulled his pistol and shot Officer Farrington. Under these conditions his assault with a dangerous weapon with intent to kill cannot be denied. In fact, the defendant himself does not question the sufficiency of the evidence of his guilt. Moreover the evidence offered by the defendant in chief establishes the fact of his guilt. He admitted that he was seen drinking in a public place and that when he was accosted by the officers, in the altercation that followed, he pulled his pistol and shot Officer Farrington. As was said in Murphy v. State, 72 Okla. Cr. 1, 112 P. 2d 438, 443:

"It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his substantial rights by the commission of error."

This rule is predicated upon the provisions of Title 22 O.S.A. 1941 § 1068, wherein the Legislature

"made it clear that no judgment of conviction shall be set aside or new trial granted 'on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.' "

In Pressley v. State, supra, relied on by the defendant, Pressley stoutly denied the truth of the confession given by him, while herein Dixon never at any time denied its truthfulness but in his defense in chief substantially corroborated the state's evidence made without aid of the confession. Under these conditions the admission of the confession is wholly lacking in injury to this defendant. Its admission while clearly erroneous certainly was not prejudicial. Here there has been no miscarriage of justice. Moreover the confession in this case was merely cumulative of facts testified to by both the state's witnesses and the defendant. In Wood v. State, 72 Okla. Cr. 347, 116 P. 2d 734, 735, it was held:

"Evidence which is merely cumulative will not be held reversible error, even though the evidence be inadmissible."

See, also, Carr v. State, 22 Okla. Cr. 371, 211 P. 423. To sustain this contention would be to defeat the ends of justice, which in absence of prejudice the law does not require.

The third contention of the defendant is that the court erred in denying defendant's motion for a mistrial, based upon the testimony of Sheriff Cliff Keirsey who testified for the state as follows:

"Q. What did you do with the defendant, Lonzo Dixon? A. What did I do with him? Q. Yes. A. I first brought him to Ardmore, Oklahoma, and put him in jail at Ardmore, and later— Q. Why? A. I was afraid to bring him here at that time—"

The court overruled defendant's motion to declare a mistrial, to which the defendant excepted. Whereupon the court admonished the jury:

"You, Gentlemen of the Jury, disregard that last question and answer, entirely; disregard them in toto; don't consider them."

Under these conditions the court properly overruled defendant's motion to declare a mistrial. In Morgan v. Territory, 16 Okla. 530, 533, 85 P. 718, 719, this court held that the general rule is "error in the introduction of incompetent testimony, which is afterwards excluded by the trial court, is not such prejudicial error as will entitled the defendant to a new trial." Barnes v. State, 32 Okla. Cr. 383, 240 P. 758.

For all of the reasons hereinbefore set forth the judgment and sentence herein imposed is affirmed.

JONES, P. J., and BAREFOOT, J., concur.