Joe Mansfield **POLLARD**, Áppellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–571.

Court of Criminal Appeals of Oklahoma.

Nov. 20, 1974.

George D. Sherrill, Jr., DeBois, Peck & Sherrill, Duncan, for appellant.

Larry Derryberry, Atty. Gen., Amalija J. Hodgins, Asst. Atty. Gen., for appellee.

## OPINION AND DECISION

BRETT, Judge:

This is an appeal from a conviction in the District Court, Stephens County, Oklahoma, Case No. CRF–74–27, in which appellant, Joe Mansfield Pollard, was convicted for the offense of Burglary, Second Degree, After Former Conviction of a Felony. Appellant was tried by a jury in a two-stage proceeding, after which the jury assessed appellant's punishment at ten (10) years imprisonment. From that judgment and sentence the appellant has perfected his appeal to this Court. The appellant will hereinafter be referred to as defendant, as he appeared in the trial court.

Defendant in this case was convicted for the burglary of the Talley-Walker Clinic in Marlow, Oklahoma. Defendant was originally charged conjointly with Kenny Bond Kincannon, but a severance was granted and the two men were tried separately. The State proved its case by use of ten witnesses and the introduction of some 19 exhibits. The testimony clearly showed that the clinic was properly locked at 5:30 or 6:00 p. m. on February 19, 1974; and after that hour to obtain entry it was required to ring a doorbell affixed outside each entryway. Several nurses were retained on night duty at the clinic.

Charles Edward Tow, a Marlow Police Officer, testified that at 4:28 a. m. he received a report that a suspected intruder was in the Talley-Walker Clinic. Officer Tow proceeded to the clinic and parked the police vehicle in front of the building. He noticed a person, who was later identified to be defendant, exit from the front door of the clinic, close the door behind him, jump down from the porch, and start running across the lawn. Officer Tow shouted a command to stop, but the person continued running. The officer pursued the man, apprehended him, and succeeded in handcuffing him and placed him in the police car. Officer Tow then proceeded to check the clinic for other intruders. While checking the clinic Officer Tow observed the rooms had been ransacked, doors opened, and medicine and papers thrown about the floor in the various offices. Shortly thereafter, Assistant Police Chief Ralph Abney arrived and the man was removed from the police car and advised of his constitutional rights. He was later transported to the jail.

A further investigation revealed that entry to the clinic was made through a window in a laboratory room. The window had been raised and the screen unlatched. The weather stripping on the window was scratched and bent, which indicated the use of some tool to secure entry. A crowbar and screwdriver were found near the window, both of which were introduced into evidence, along with the clothing the defendant was wearing at the time he was arrested. A metal rule with black tape wrapped around, which fell from the defendant's coat while he was being advised of his constitutional rights, was introduced into evidence. Upon arrival at the police station, a pat-down search of defendant for weapons revealed that he had a total of $142.00 in his possession, which was secured with a paper clip. The clinic personnel had indicated that $130.00 had been stolen.

When defendant was incarcerated in the jail he was placed in the "north cellblock," which was rarely used. Several days after he was placed in the cell, the authorities found some keys with a tag attached, indicating they were "narcotics keys," which had been reported missing by the clinic personnel. Officer Tow testified that another suspect, Kenny Kincannon, was arrested in Marlow and placed in a south cell of the jail, but the two defendants could not see or reach each other. The officer testified that at the time of preliminary hearing the "narcotics keys" had not been found. The defendant was incarcerated on Febrary 19, 1974, and the keys were found in his cell on March 10, 1974.

Another witness, Cathleen Houtze, a hospital nurse, testified she arrived for duty at 11:00 p. m. on the night in question, and proceeded to check every door and window of the clinic, as was her customary duty. She related that she realized something was amiss when she noticed that a door to one of the offices which had earlier been opened was partially closed. She observed a man exit from that office and proceed down the hall and out the front door. She testified that the person was wearing a dark jacket and a toboggan cap like that defendant was wearing when he was apprehended. Another registered nurse, Beatrice Lowe, related that she accompanied Ms. Houtze on her security check and testified that she also saw an individual leave the clinic.

Dr. Jose Guijarro testified concerning the condition of his office after the robbery, and related that he locked his office when he left, about 6:00 p. m. He related that after the burglary he discovered his door had been opened, all of his desk drawers had been opened, and medicine and papers were scattered about the floor.

Estelle Green, the clinic receptionist, testified that on February 18, 1974, she had collected $83.00 in fees, and that she also kept $50.00 in her desk for the purpose of making change. She testified that the money had been kept together by use of a paper clip, and it was in her desk drawer when she locked it. She identified the money introduced into evidence as being of the same denomination as that which she had locked in her desk drawer on February 18th.

Kenny Bond Kincannon, who was initially charged as a co-defendant, testified that he was with defendant on the date in question; that he and defendant left the defendant's home at midnight to take a girl home; that he drove the defendant's car and followed the defendant and the girl in her car. Later he and defendant proceeded to a gasoline station where defendant purchased and paid for the gasoline, and that they had a discussion about money.

They then drove to Marlow, Oklahoma, where they circled the block on which the hospital was located and parked the car nearby. The witness testified that he removed the crowbar and the pillow case, which were found in the clinic, from the car, along with several other tools. He related that defendant gained entry into the clinic through a window; and that before he (Kincannon) entered through the window, he left the scene in order to relieve tension, but when he returned the defendant was not in sight, so he entered the clinic through the window. Mr. Kincannon testified that he saw the defendant in the clinic and met him at the clinic front desk; that the desk drawers were pried open with a screwdriver; that he found money in a drawer which he placed on top of the desk; and he related that he saw defendant open a file cabinet. He testified that when he heard the nurses talking about calling the police he left the clinic through the window they had entered. On cross examination Kincannon stated that he had drunk about half a quart of Jack Daniel's Whiskey on the evening in question, that he was intoxicated, and that he could not make positive identification that the person he saw in the clinic was the defendant, but that it appeared to be the defendant.

At the conclusion of Mr. Kincannon's testimony, the State rested. Mr. Kincannon was the tenth and final witness to testify.

Defendant demurred to the evidence and moved for a directed verdict, both of which were overruled. Defendant declined to offer any testimony or evidence in his behalf, but offered two requested instructions, both of which were denied by the trial court.

Thereafter the court instructed the jury on the first stage of the trial, and after considering its verdict the jury returned a verdict finding defendant guilty of the charge of second degree burglary. The court proceeded to conduct the second stage of the proceedings on the after form-

er conviction charge. The jury retired to consider its verdict and thereafter assessed defendant's punishment at 10 years imprisonment, which is the minimum statutory punishment.

Defendant's first proposition of error asserts that he was denied due process when the court reporter failed to record the closing arguments after defense counsel requested that the closing arguments be recorded. Defendant asserts in his brief that prior to the actual closing argument, defense counsel "told the court reporter that it would not be necessary for her to transcribe the closing arguments by shorthand, but that it would be alright if she electronically recorded said arguments." It is asserted further that the court reporter erroneously failed to record the closing arguments. In the affidavit attached to the brief, executed by Antony Link, he states in his affidavit in part:

"That, during the first stage of the proceedings in the aforementioned case (i. e., prior to the time the jury had returned a verdict of guilty of burglary second degree against the Defendant, Joe Mansfield Pollard) and prior to the time actual closing arguments were made, the official Court Reporter, Julia Smith, asked if I wanted the closing arguments taken down in shorthand. I responded that 'it would not be necessary to have said closing arguments transcribed in shorthand but she should leave the tape recorder on.'"

The affidavit goes on to state to the effect that when counsel learned that the electronic tape recorder was not turned on, he moved for a mistrial, which was denied by the court. Exhibit "B" attached to defendant's brief, which is the affidavit of Julia Ann Smith, recites that she requested both the prosecutor and defense counsel whether or not they wanted the closing arguments transcribed; and her affidavit states:

"That, defense counsel's response to me was: 'What do you usually do?' I advised Mr. Anthony Link (sic) defense counsel, that a record was not made of closing arguments unless requested by one of the attorneys or the Court. Mr. Link stated to me that it was not necessary to take closing arguments in shorthand but to leave my electrocal recording equipment on during closing arguments."

Julia Ann Smith's affidavit continues and states that she failed to electronically record said closing arguments. When defense counsel learned that the recording device was not turned on, he moved for a mistrial which was denied by the trial court.

In support of this proposition defendant relies on Thomson v. State, Okl. Cr., 389 P.2d 526 (1964), and the provisions of 20 O.S.Supp.1974, § 106.4(a). However, after considering Thomson v. State, supra, we find that it can be distinguished from the instant case. It is a conceded fact that the tape recorder was not left on through inadvertence, error, or oversight on the part of the court reporter, but in the *Thomson* case, it is clear that there was a refusal by the court to permit the recording of certain statements. The section of the statutes referred to by defendant provides that a refusal of the court to permit or to require any statement to be taken down shall be deemed prejudicial error, without regard to the merits thereof. But in the instant case there was no refusal on the part of the court which prevented the closing statements from being recorded. We observe also the defendant fails to show how he may have been injured by the inadvertent error of the court reporter. This Court has long held that with error defendant must also show how he suffered injury thereby. See Dixon v. State, 89 Okl.Cr. 205, 206 P.2d 231 (1949), and Sargent v. State, Okl.Cr., 509 P.2d 143 (1973). Insofar as defendant received the minimum sentence allowed by the statutes, we fail to see how such inadvertence on the part of the court reporter could have caused any prejudicial effect or injury to defendant.

■ Defendant's second proposition of error asserts that it was error to permit the use of his former conviction in Stephens County District Court Case No. CRF–70–100, because of the 10th Cir.Ct. of Appeals decision in Lamb v. Brown, 456 F.2d 18 (1972), in that defendant was 17 years old at the time he sustained that conviction. In support of his contention, defendant cites as authority the 10th Cir.Ct. of Appeals unpublished Order in the matters of Radcliff v. Anderson, No. 73–1520, and Stringfield v. Grider, No. 73–1550, wherein that court held that the Lamb decision was to be fully retroactive. This Court can take judicial notice of the fact that those unpublished orders have been withdrawn and are now pending on rehearing before the 10th Circuit Court of Appeals. This Court has heretofore held that Lamb v. Brown, supra, will not be applied retroactively.[1] Defendant requests that this decision be held in abeyance until the 10th Circuit Court of Appeals reconsiders the *Radcliff* and *Stringfield* matters; but after considering the merits of this conviction, insofar as the evidence is conclusive concerning defendant's guilt for the charge of burglary, we decline to grant defendant's request in this respect. However, should the U. S. Court of Appeals hold that the Lamb v. Brown, supra, decision is to be applied retroactively, defendant will not be precluded from seeking further relief under the post conviction relief procedures.

Defendant's third proposition of error cites nine alleged errors which he contends constitutes reversible error. We disagree. First, appellant contends error was committed when he was bound over at preliminary examination. No authorities are offered to support this contention; but notwithstanding, we believe the Attorney General is correct when he states that the prerequisites of probable cause, as set forth in Neff v. State, 39 Okl.Cr. 133, 264 P. 649 (1928), were met at defendant's preliminary examination.

■ Secondly, defendant contends that the chain of custody was not properly shown with reference to State's exhibits two through nineteen, and that such evidence was incompetent, irrelevant and immaterial. "Two create a complete chain of evidence it is not necessary that each link have personal knowledge of each and every other link." Jones v. State, Okl.Cr., 507 P.2d 1267, 1270 (1973). In this case the record shows the evidence went from the arresting officer to the District Attorney's Office. Likewise, as we view the evidence offered, it was part of the res gestae in that it. was clearly shown to be connected with the crime. See: Hill v. State, Okl. Cr., 456 P.2d 617 (1969). The only exhibit introduced, which may offer some question, was the set of "narcotics keys." Nonetheless, they were shown to be property of the clinic; and they were so closely connected with the crime as to make them admissible. And even considering the circumstances under which the keys were found, they were admissible. The other evidence offered in addition, standing alone, was sufficient to sustain appellant's conviction. In Peoples v. State, Okl.Cr., 270 P.2d 380, 382 (1954), this Court held that a shotgun stolen in a burglary and later found in a closet of the apartment adjoining defendant's apartment, on the morning following the burglary, was admissible. In *Peoples* this Court said:

"While there was no direct testimony that defendant at any time exercised control over the shotgun, the circumstances surrounding its being found in the closet of the adjoining apartment, considered along with the other facts and circumstances showing the exercise by defendant of control over a box of clothes in the bathroom jointly used by Flowers and Peoples was sufficient cir-

---

1. This writer has dissented to this Court's decisions holding the Lamb v. Brown decision to be non-retroactive. See Hawkins v. State, Okl.Cr., 510 P.2d 693 (1973) and Schaffer v. Green, Okl.Cr., 496 P.2d 375 (1972). Nonetheless, until the majority position of this Court is changed, those decisions are binding.

**.1126**

cumstance to justify its admission in evidence, after the same had been identified by Mr. Himes [the store owner] as the gun which was stolen in the burglary."

We therefore conclude that the "narcotics keys" were of the same category of evidence and under the circumstances, they were properly admitted into evidence.

Defendant's third error cited under this proposition, that the court erred in denying defendant's motion for mistrial, is discussed hereinbefore.

 Fourth, defendant complains that the trial court refused to give his requested instructions. It is within the discretion of the trial judge to accept or refuse requested instructions; and unless that discretion is abused, this Court will not interfere with the trial court's judgment, when these instructions are considered in their entirety. See: Strunk v. State, Okl.Cr., 450 P.2d 216 (1969).

Fifth, defendant asserts that the trial court should have sustained his demurrer to the State's evidence, because the State failed to prove that the defendant committed a breaking as required by the statutes. We disagree. The State clearly proved that an illegal breaking and entering was accomplished by one or the other of the two men; and whether or not this defendant actually accomplished the required illegal "breaking" was immaterial. Even if he aided and abetted in the illegal entry, he was equally guilty as a principal. See: Henson v. State, Okl.Cr., 500 P.2d 859 (1972), and Scearce v. State, Okl.Cr., 326 P.2d 1065 (1958).

The sixth and seventh complaints are not supported by any authorities and will not be considered by this Court. See: Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969). The eighth complaint concerns punishment on the second stage of the proceedings, and is related to discussion of Lamb v. Brown, supra. If the United States Court of Appeals determines that the provisions of that decision are not to be applied retroactively, then in that case

the defendant herein received the minimum punishment allowed by statute.

The last complaint under proposition three contends error was committed when the motion for new trial was overruled. The granting of a motion for new trial rests in the sound discretion of the trial judge; and in this case we believe the trial judge properly ruled on defendant's motion.

Now therefore, after considering defendant's appeal, we conclude that he received a fair trial in accordance with due process of law, that all his constitutional rights were properly protected and that the conviction herein should be affirmed.

It is so ordered.

BUSSEY, J., concurs.