IN THE MATTER OF THE APPLICATION OF THE HOUSING AUTHORITY OF THE CITY OF NEWARK, NEW JERSEY, FOR THE APPOINTMENT OF COMMISSIONERS TO CONDEMN PROPERTY BELONGING TO JULIA M. RYAN ET AL.

Submitted October 25, 1940—Decided January 28, 1941.

For the appellants, *Elias A. Kanter*.

For the respondents, *Milton R. Konvitz (Samuel Roessler,* of counsel).

The opinion of the court was delivered by

PARKER, J. The Housing Authority, desiring to acquire a tract of vacant land in Newark owned by the appellants, and being unable to agree with the owners as to the value thereof, and acting pursuant to power conferred on it by statute (*R. S.* 55:14-7) presented the usual petition to a judge of the Circuit Court of Essex county, for the appointment of commissioners; and commissioners were appointed accordingly. The order of appointment was challenged on *certiorari*, and sustained by the Supreme Court. *Ryan* v. *Housing Authority*, 125 *N. J. L.* 336. The writ did not operate automatically as a stay (*R. S.* 20:1-8) and none was ordered by the court; so that pending the determination of the *certiorari*, the commissioners held their hearing and made an award of $13,000, which was appealed by the Housing Authority to the Essex Circuit Court. The issue of damages was there re-tried with a struck jury as provided by statute (*R. S.* 20:1-20) and the jury awarded $7,015 as the value of the property, and judgment was entered accordingly. The present appeal is from that judgment, and is submitted on briefs without oral argument.

Nine grounds of appeal are assigned. The fourth to ninth inclusive relate to rulings on admission of evidence, and will be presently considered in detail.

The first ground of appeal reads as follows:

"The trial court erroneously denied appellants' application to prove that qualified women jurors were, as the result of caprice in the selection of jurors or for some other reason not recognized in the law, deliberately excluded from the jury panel."

It is a fact that the list of qualified jurors as delivered to the trial judge by the sheriff, did not contain the names of any women as prospective jurors. The point was raised both at the striking of the jury, and by a challenge to the array at the opening of the trial. Counsel offered to prove that the general list of 2,201 names returned for the then present term included men only. As to this there was no doubt. He further offered to prove that the officials who compiled the list "deliberately excluded women, even though women are now qualified to act as jurors, either out of caprice or some other motive not recognized in the law." As to the "other motive" it seems enough to say that without some specification of its nature, the court was not required to consider it. As to "caprice," counsel said that he "used the word in the sense that it was without legal justification"— which seems to mean simply that the exclusion was *per se* an illegal act. That question was considered by this court in *State* v. *James, 96 N. J. L.* 132, where we said (at *p.* 141), "error would exist only if the commissioners, through improper motives, excluded members of one or the other sex in the drawing of the general panel." And this comment was made in view of the amendment of 1921 to section 1 of the Jury act (*Pamph. L., p.* 50) which substituted "he or she" for "he" and "his or her" for "his," thus recognizing the woman suffrage amendment to the federal constitution. *State* v. *Dolbow,* 117 *N. J. L.* 560, 566. In *State* v. *Carlino,* 98 *Id.* 48; affirmed in 99 *Id.* 292, it was held that the reasoning in the James case was not affected by the act of 1921. The act of 1938 (*Pamph. L.* 557, now in *N. J. S. A.* as 2:85-1) adds the sentence: "Women possessing the qualifications herein stated shall be eligible to serve as either grand or petit jurors." But this does not seem to add any new thought. Women were "eligible" under the act of 1921, and for years have been doing jury service in many of the counties: but in others, as for example Camden county where the James case was tried, the sheriff and jury commissioner gave practical reasons for not including women (at *p.* 141) : and this court added: "A defendant has no right to say what jurors shall try him. His right extends no further than to

exclude jurors by whom he objects to being tried." In the present case we conclude that the omission of women from the jury panel was not *per se* illegal, and that no improper motive was shown, or even alleged.

The second ground of appeal reads: "The trial court erroneously denied the appellants' challenge to the jury array."

So far as relates to the exclusion of women, the matter has been treated above. But it was also alleged for error that the Jury act (*R. S.* 2:93-7) requires the sheriff (in struck jury cases, like the present one) to deliver to the judge "a book containing the names of the several persons in his county qualified to serve as jurors, with their places of abode;" and that this was not done. Something is said to the effect that counsel for appellants offered to prove certain facts and that the offer was overruled: but the facts claimed may well be treated as duly proved. As we understand the claim they are as follows: premising that counsel conceded that the requirement of a "book" was met by the production of a "list" on sheets of paper:

1. That the list contained no names of women.

2. That the list contained only 2,201 names of qualified jurors and that in the county of Essex (population per census of 1930, 833,513) there must be many more.

3. That the list contained names beginning only with initials F, G and H: and that it is inconceivable that these should be the only initials.

Of course the list of 2,201 names was not a complete list of Essex citizens liable to jury duty, and probably it did not include one per cent. of such persons. It did not include women: and it covered only three letters of the alphabet. But we read in the case of *State* v. *Simmons,* 120 *N. J. L.* 85, an Essex county case, that the general jury list used in that case was limited to initials M, N, O, P and Q. This court held that the statute regarding the making of the list was directory only, and that defendant was in nowise prejudiced. That ruling seems to be controlling here. We consider that the list of 2,201 names furnished ample material for the selection of forty-eight as a struck jury panel; that

appellants were not prejudiced by the omission of women from the list, and that there was no claim of any illegal motive in omitting them: and that the reason suggested in the Simmons case for the selection of a few letters of the alphabet is doubtless cognizable in the present case.

It may be well to add that in proceedings for the taking of property in the exercise of the power of eminent domain, there is no constitutional right to a jury trial at all. This was held as long ago as 1832, by the Court of Chancery in *Scudder* v. *Trenton Delaware Falls Co.*, 1 *N. J. Eq.* 694, 721, which involved a statute of 1831 (*Pamph. L.*, p. 131, at p. 135) providing for the usual ascertainment of compensation by commissioners, but without appeal or jury trial. The Supreme Court similarly held in 1872, *In re Application, &c.*, 35 *N. J. L.* 497, 507; and again in 1892, *Morris* v. *Comptroller*, 54 *Id.* 268, 273.

The foregoing seems to cover the first two grounds of appeal. The third reads that "The trial court erroneously essayed to 'quash' from the subpoena *duces tecum* served for the appellants the requirement for the production of certain documents competent and material for the appellants' cause." This specifies nothing, and hence requires no consideration. The fourth, challenging the exclusion of a question to the witness Convery, does not seem to be argued, and in that event is waived. However, we think the question was immaterial and that the exclusion was not legal error.

The fifth and sixth may be considered together: though the sixth, alleging error in "refusing to allow appellants' witness Neil J. Convery to produce certain photographs" is like the third in failing to specify. The fifth alleges error in excluding *Exhibits R-3* to *R-9,* inclusive, marked for identification, from admission in evidence. *Exhibits R-3* to *R-6* are option contracts, for sale of several neighboring tracts, by other parties than the appellants. Each is headed: "Offer of sale of land." The option purchaser is not bound in any way except by giving notice of acceptance, which must be within a limited time: mere offers to sell neighboring property are incompetent. *Montclair Railway Co.* v. *Benson*, 36 *N. J. L.* 557. But apparently *Exhibits R-3, R-4* and *R-6*

had ripened into deeds, *R-3* into *R-9*, *R-4* into *R-7* and *R-6* into *R-8*: so that in those three cases the situation was presented of an actual conveyance of property similarly situated. But the trial court excluded the deeds on the ground that admittedly the properties were improved by buildings and that the land of appellants was vacant: and in this we fail to see legal error. The general rule is that for sales of neighboring or adjoining land to be comparable as indices of value of land taken there should be substantial similarity of conditions: *Laing* v. *United New Jersey Railroad Co.*, 54 *Id.* 576, 579: and we think the trial judge properly ruled as a matter of discretion that to go into arithmetical computations of value of neighboring land as distinct from buildings, for purposes of comparison of value, by taking the sale price of another tract consisting of land and building as a subtrahend, and requiring the jury to ascertain from probably conflicting testimony the value of such building, and deduce the value of such other land by subtracting the value of the building from the total sale price, would introduce issues not fairly relevant to the inquiry. Expert evidence on the value of such other land as land was readily available: and we see no error in limiting the inquiry to that.

The seventh and eighth grounds do not seem to be argued, and consequently require no consideration.

The ninth and last ground of appeal alleges error in excluding a question to respondent's witness Kraemer about the value of a neighboring property. The record shows that that property had a building thereon; so that the foregoing discussion of the fifth and sixth grounds is applicable and controlling.

We find no error calling for a reversal, and the judgment is accordingly affirmed.

*For affirmance*—The CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.