## HILL v. STATE.

No. A-11699. April 1, 1953.

Rehearing Denied May 6, 1953.

(256 P. 2d 469.)

A. L. Commons, Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., James Reed, County Atty., Ottawa County, Miami, for defendant in error.

POWELL, P. J. The defendant, M. H. Hill, was charged by information filed in the county court of Ottawa County with on the 11th day of August, 1951,

"operating a motor vehicle while under the influence of intoxicating liquor" and "from a point unknown to a point at 19th and North Main St., Miami, * * *."

Trial before a jury was had on the 13th day of November, 1951, and the defendant was by the jury found guilty and on November 23, 1951, assessed punishment at a fine of $50. The court entered judgment accordingly. The case is properly here on appeal.

The state relied on the evidence of but one witness to establish the charge of drunkenness and being Cleo Wilson of the Miami police department. His testimony was to the effect that on the morning of August 11, 1951, at about 3:00 o'clock, he was on north Main street, Miami, and at 19th and Main he and a fellow officer saw a car weaving from side to side and a number of cars behind him, and they attempted to stop the driver but had trouble doing so. Said the witness:

"We had the red light on and the siren and the car continued weaving from side to side and finally got off the road on the new part of the highway, two wheels off and back again. We finally got him stopped. In doing so he got off the black top into the mud on the part over on the construction. O. Both right wheels? A. All four wheels when he stopped."

Witness further testified that he had had occasion to arrest a number of drunk men, and that in his opinion the defendant was drunk; that his speech was incoherent, his eyes red and blood-shot, and he smelled liquor on his breath, and when he walked he did so in a weaving manner. The officer testified that the street was rough and one lane had been torn up and was being resurfaced.

The defendant testified and denied being intoxicated, denied having drunk intoxicants. He offered a number of witnesses who testified to his reputation as to being a peaceable and law-abiding citizen as good, and offered witnesses who testified to the roughness of the street or road in question by reason of the reconstruction work. Defendant attributed his weaving to the condition of the road and being frightened by the red light and siren from the officer's car.

These were matters for the consideration of the jury. There was sufficient evidence for the submission of the case to the jury, and it will be noted that the jury assessed a very light fine and no jail sentence. From a consideration of the record as a whole, if the jury had assessed heavy punishment, we would, by reason of a voluntary statement of the officer, to be mentioned later, have probably given consideration to modification, under authority of Tit. 22 O.S. 1951 § 1066, but where there is substantial evidence of the guilt of an accused irrespective of some error, we have no authority to go further.

For reversal two main propositions are argued in brief, and being:

"Proposition No. 1. Errors of law occurring at the trial.

"Proposition No. 2. Refusal of the trial court to quash the jury panel."

The first proposition is based on a question asked Garland Peek on cross-examination by the county attorney. The witness was a highway patrolman called by the defendant as a witness in his own behalf. On direct examination he was asked only as to the condition of the road at the point where the defendant was arrested. The inference from the questions being that the roughness and chugholes in the road might have accounted for any possible weaving of a car, etc. On cross-examination the county attorney attempted to ask questions outside of this category, as follows:

"Q. Did you ever see the defendant M. H. Hill before? Mr. Commons: Objection. Improper cross-examination. I didn't go into that in chief, just asked him

about the road. The Court: Overruled. Mr. Commons: Exception. A. Yes, sir. Q. Where? A. Brought him from Commerce to Miami, September 1, 1950. Q. Who did? A. I did. Horace Rider and I. Mr. Commons: Objection, and move the answer be stricken. This is on cross-examination, and move the answer be stricken and the court declare a mistrial. The Court: I will sustain the objection to the evidence and admonish the jury not to consider that answer."

Of course, the question the county attorney asked witness Peek as to "whether he had ever seen the defendant, Hill, before" was innocent enough. The county attorney may or may not have anticipated that the officer, by reasons that the county attorney possessed knowledge of, might make some additional statement that might strengthen his case. The officer did volunteer more than the question asked required. The court properly and correctly instructed the jury not to consider the statement. We must assume that the jury followed the instructions of the court, and under the state of the record, we are not justified in assuming that the county attorney had any understanding with defendant's witness which of course would have been highly out of line and not to be condoned. Under the circumstances presented, we cannot treat the matter complained of as reversible error.

Defendant proved that he was 63 years of age, held a responsible position with one of the mining companies as a guard, and that he bore an excellent reputation as a peaceable and law-abiding citizen. The accused positively denied having drunk any intoxicants the day of the arrest, and denied being intoxicated. Nevertheless, the jury concluded that the defendant was actually intoxicated as charged. This was within the province of the jury, and no issue is raised as to this being the rule.

The difficult question presented is the second and final proposition involving the refusal of the trial court to quash the jury panel.

The record discloses that counsel for the defendant on the 10th day of November, 1951, and several days prior to trial, filed in the case a "Motion to quash the jury panel". In his brief counsel states:

"Said motion alleges in substance that the defendant is not guilty and demands a trial by jury of his [defendant's] peers, and according to the motion the said jury panel consisted in its entirety of male citizens; that the officials of Ottawa County who prepared the names of the proposed jury in some list, or capsule excluded the names of female citizens of Ottawa County; and that by said act the defendant was deprived of his rights under Article 2, Section 19 of the Constitution of the State of Oklahoma; that at the time the jury panel was drawn for this term of court there was in full force and effect Enrolled House Bill No. 145, 38 O.S. 1951, § 28, and the officials who drew the said jury list wholly ignored the provisions thereof; that the said defendant was deprived of his rights as a citizen under Article [Amend.] XIV, § I of the Constitution of the United States of America, in that he is being deprived of his life, liberty and property without due process of law."

The evidence adduced showed no female jurors were on the jury panel; the court clerk indicated that it was not his intention to draw any female names. Counsel for the defendant states:

"The matter of the constitutionality of having females on the jury was thoroughly decided in case House Bill No. 145 (In re Fry) [205 Okla. 364] 237 P. 2d 624".

An examination of sections 18 and 19, Article 2 (Bill of Rights) of the Oklahoma Constitution, respectively, provided:

"A grand jury shall be composed of twelve *men* * * *. (Section 18.)

"* * * a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve *men;* but, in county courts and

courts not of record, a jury shall consist of six *men.*" (Section 19) (Italics supplied.)

The Supreme Court of this state (November 27, 1951) has determined that the constitutional provision that a grand jury should be composed of twelve men, section 18, above, and another provision, section 19, above, also referring to jurors as "men" used the word "men" in its generic sense, and included women or females as well, and the Legislature had power, consistent with such constitutional provision, to eliminate the disqualification of women to serve on juries. See In re House Bill No. 145 (In re Fry), 205 Okla. 364, 237 P. 2d 624.

The effect of the holding of the Supreme Court of this state is that females, as well as males, have been eligible for jury service not only since May 16, 1951, the effective date of House Bill No. 145, but since the adoption of our State Constitution. The question having been properly before the Supreme Court of this state prior to a proper submission to this court in a criminal case, and in keeping with our practice to adhere to the holdings of that court even as it might incidentally affect criminal matters, we shall not treat the question further, but hold, applying the principle announced by that court, that males and females were both eligible for jury service in Oklahoma on November 13, 1951, the day defendant was tried in the instant case.

We think the evidence supports the contention that females were systematically excluded from the jury for the trial of the defendant herein on the 13th day of November, 1951, the officials not having interpreted the word "men" as used in House Bill No. 145, supra, as including women, as later so determined by the Supreme Court of this State. It is important to note that there was no evidence, however, nor was it even alleged, that the exclusion of any eligible juror *was brought about by any improper motive of any of the officials* preparing the jury panel or drawing the names for the petit jury.

This brings us to the question of whether or not the defendant herein, a male, has the right to challenge the instant jury panel because of the facts just recited.

The Attorney General has called our attention to an early Wyoming case of McKinney v. State, 3 Wyo. 719, 30 P. 293, 295, 16 L.R.A. 710, where there was involved a constitutional provision that by its terms it was contended made females eligible to serve on juries but where the statutory provisions provided by the Legislature seemed to exclude women from serving as jurors. The court avoided in that case determining whether or not the constitutional provision was self-enacting, but did fully treat the question of the right of a male, under the constitutional provision in question (assuming that women did have the right to serve as jurors) to complain of women having been excluded from jury service. The reasoning of the court is interesting and persuasive. We feel justified in quoting at some length from the body of the opinion, where the court said:

"It may be that jury duty is a right or privilege, that of assisting in the administration of justice, as it is put by some of the courts—an important function of government, affecting the rights and interests of both sexes. We do not feel justified in deciding a question of such grave importance on the spur of the moment, and without a full argument. We do not find it necessary to do so in this case; for the plaintiff in error complains that, by the exclusion of women from the jury that tried him, he was not accorded the equal protection of the laws of this state, and was deprived of his rights, privileges, and immunities accorded to him under the provisions of the fourteenth amendment to the constitution of the United States. He sought to have the cause removed to the federal court for trial for this latter reason, and assigns this as error, also. He had no such right of removal, as the object of the fourteenth amendment to the federal constitution was against discrimination because of race or color, and not because of sex. 'Its design was to protect an emancipated race, and to strike down all possible

legal discriminations against those who belong to it.' Strauder v. West Virginia, 100 U. S. [303] 310 [25 L. Ed. 664]. In this case the court said: 'We do not say that within the limits from which it is not excluded by the amendment a state may not prescribe the qualifications of jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to persons within certain ages, or to persons having educational qualifications. We do not believe the fourteenth amendment was ever intended to prohibit this.' This was a cause where the removal from the state to the federal court was granted. The plaintiff in error was a colored man indicted and tried for murder in the courts of the state of West Virginia, where he was convicted. He seasonably made his motion for removal of the cause to the federal court, but was refused this by the state courts. The supreme court of the United States held that he was entitled to such removal, as the statute of the state restricted jury duty to whites. Such a statute was held to be a violation of the amendment as the state law discriminated in the selection of juries against negroes, because of their color, and amounted to a denial of the equal protection of the law to a colored man put on trial for an alleged offense against the state. This decision was fortified by the later cases of [State of] Virginia v. Rives, 100 U. S. 313 [25 L. Ed. 667]; Ex parte [State of] Virginia [700 U.S.] 339 [25 L. Ed. 676]; Neal v. Delaware, 103 U. S. 370 [26 L. Ed. 567[; Bush v. Kentucky, 107 U. S. 110, 1 S. Ct. 625 [27 L. Ed. 354]. These cited cases held that the removal should be granted under hostile statutes. They held also that discriminations against negroes on account of color, by officers charged with the duty of selecting jurors, would be corrected on error. But there appears to be no case where a white man has asked for a removal of a cause wherein he is a party, or its reversal on error, because a statute excluded other races than his own from a jury before whom he could be or is tried, or because officials charged with the duty of selecting or summoning those of his own race only to serve as jurors in his cause. The right has, we believe, been always demanded by the citizen whose rights, or the rights of whose race or color, were infringed or discriminated against. No statute has been declared unconstitutional, no act held unlawful, because a white man was tried by his own race or color. In the case at bar the right of removal to the federal court did not exist, because the discrimination under the federal constitution and under the federal law was prohibited as against the African race, not as against female citizens.

"If the plaintiff in error can complain, it is because the constitution of this state, and not the constitution of the United States, was violated in the exclusion of female citizens from the jury that tried him. It was said in the case of Strauder v. West Virginia, supra, that the very idea of a jury is that the body of men of whom it is composed are the peers or equals of the person whose rights it is selected or summoned to determine, and that they must be of the same legal status in society as that which he holds. The plaintiff in error asserts a right or privilege of having members of the opposite sex, as well as those of his own sex, to determine his rights, because they are unconstitutionally excluded from enjoying a right granted to them, and not because any one of his own sex is denied the right. If women have the right, if it is a right, to serve as jurors, and to 'assist in the administration of justice' thereby, it seems that no one but a woman—one of the class or sex whose rights have been invaded—can assert that right. It must be demanded by one who has been denied the equal protection of the law, and a civil or political right or privilege of which she, in common with her sex, has been deprived. The courts will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who therefore has no interest in defeating its invasion. Cooley, Const. Lim. 164. The supreme court of Kentucky has passed upon the question as to whether or not a white man could complain of a statutory exclusion of colored men from a grand jury that indicted him; and as the opinion is so pertinent on this point, we quote the same in extenso. 'In Johnson v. Com. [Com. v. Johnson], 78 Ky. 509, we held, in pursuance of authoritative decisions of the supreme court of the United States, that a state law which excluded negroes from service on grand and traverse juries would, if enforced, deprive colored persons of the equal protection of the law, and that such statute was therefore unconstitutional. We are now called upon to decide whether the statute deprives white persons of the equal protection of the law. In other words, whether a white person,

28

indicted by a grand jury composed wholly of persons of the white race, can complain because negroes were excluded from the grand jury by which he was indicted. Only those who are prejudiced by an unconstitutional law can complain of it.' "

See, also, State of New Jersey v. James, 96 N.J.L. 132, 114 A. 553, 16 A.L.R. 1141; and In re Housing Authority of City of Newark (In re Ryan), 126 N.J.L. 60, 17 A. 2d 812, 813. In the first case, the court in the sixth paragraph of the syllabus said:

"Even if the omission of the jury commissioners to return women upon the panel were unlawful, and if the act recognizing the common-law qualification of men only as jurors were unconstitutional in that regard, still the question cannot be raised by the defendant, a man, as he was not thereby injured; as a white man cannot urge * * * the rights of another race have been assailed, so a man cannot complain because women are denied the same rights as men; such rights may be demanded only by members of the proscribed race or sex."

There are other analogous cases of interest and related to the question here involved, and being: Martin v. Texas, 200 U.S. 316, 26 S. Ct. 338, 50 L. Ed. 497; Carrick v. State, 41 Okla. Cr. 336, 274 P. 896; 1 A.L.R. 2d note at pages 1294 and 1308.

As we view the matter under the facts as here presented, and adopting the reasoning of the Wyoming court in McKinney v. State, supra, the defendant, a man, cannot claim that any civil, political, or other right or privilege of his or of his sex is infringed, invaded, or annulled by the failure of officials to include women on a jury panel of the jury which tried him. He has been tried by his peers. He has not been denied the equal protection of the law. He has not been discriminated against because of his sex, and the trial court as a consequence did not err in overruling his motion to quash the jury panel, his demurrer on such account, or failure to grant a new trial.

For the reasons stated, the judgment of the county court of Ottawa county is affirmed.

JONES and BRETT, JJ., concur.